UNITED STATES ex rel. LEE AH YOUW et al. v. SHAUGHNESSY.

United States District Court
S. D. New York.

Feb. 18, 1952.

Myles J. Lane, U. S. Atty., Southern District of New York, New York City (William J. Sexton and Lester Friedman, New York City, of counsel), for respondent.

Charles Spar, New York City, for petitioners.

MURPHY, District Judge.

This is an order to show cause why a petition for a writ of habeas corpus should not be permitted to be filed by Lee Ah Youw, Lee Ah Yang and Young Boon Ming, all in the custody of the Immigration and Naturalization Service of the United States. The proceeding having been argued by counsel as if a petition had been filed, the matter will accordingly be disposed of. Only the case of Lee Ah Yang is discussed in this opinion.

Lee Ah Yang, a native and citizen of China, entered the United States as a seaman for shore leave only while his vessel remained in port on August 7, 1950. Having remained longer than the twenty-nine days permitted by law, an immigration warrant of arrest was issued and executed, and after a hearing on March 1, 1951 his deportation was ordered. His appeal to the Board of Immigration Appeals was dismissed on July 24, 1951, thereby making final the determination of his deportability. Subsequently he made application for adjustment of his immigration status as a displaced person under Section 4 of the Displaced Persons Act of 1948, 50 U.S.C.A. Appendix, § 1951 et seq. This proceeding challenges the continuation of detention of the petitioner who has been in custody since January 25, 1951 and who has not yet been deported.

Prior to the adoption of the Internal Security Act of 1950, Section 20 of the Immigration Act of February 5, 1917, 39 Stat. 890, 8 U.S.C.A. § 156, made release of an alien taken into custody discretionary with the Attorney General under certain conditions "pending the final disposal of the case".[1] The statute made no provision with respect to release or detention during the period between final disposal of his case and actual departure of the alien. The Internal Security Act in amending this section undertook to make such provision. Act of September 23, 1950, c. 1024, Title I § 23, 64 Stat. 1010, 8 U.S.C.A. § 156(a).[2]

[1] "* * * Pending the final disposal of the case of any alien so taken into custody, he may be released under a bond in the penalty of not less than $500 with security approved by the Attorney General, conditioned that such alien shall be produced when required for a hearing or hearings in regard to the charge upon which he has been taken into custody, and for deportation if he shall be found to be unlawfully within the United States."

[2] "* * * Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole. It shall be among the conditions of any such bond, or of the terms of release on parole, that the alien shall be produced, or will produce himself, when required to do so for the purpose of defending himself against the charge or charges under which he was taken into custody and any other charges which subsequently are lodged against him, and for deportation if an order for his deportation has been made. When such an order of deportation has been made against any alien, the Attorney General shall have a period of six months from the date of such order within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on conditional parole, or upon bond in an amount and specifying such conditions for surrender of the alien to the Immigration and Naturalization Service as may be determined by the Attorney General. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States has not been effected, within six months from the date of the order of deportation the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized hereinafter in this section. The Attorney General is authorized and directed to arrange for appropriate places of detention for those aliens whom he shall take into custody and detain."

The amending statute divides the period between final determination and actual departure into two parts. The first part consists of six months during which the Attorney General is to effect departure. During this time the statute expressly makes discretionary with him the alien's detention, release on conditional parole, or upon bond. The second part begins six months after the order of deportation and provides that "the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized hereinafter in this section." [*Id.*] The problem presented by the instant case is that although the statute subjects the alien involved to "supervision and detention * * * as is authorized hereinafter * * *", the statute thereinafter expressly provides only for "supervision under regulations prescribed by the Attorney General."[3] And the regulations adopted by the Attorney General follow closely those which the statute requires him to make and cover only supervision of aliens so circumstanced.[4] The only "detention * * * authorized hereinafter" consists of that necessarily involved in proceedings after arrest of an alien who has wilfully violated these statutory or administrative provisions for supervision, which violation is made felonious under the statute. 8 U.S.C.A. § 156(b), note 3 supra.

So far then as Lee Ah Yang is concerned, since the expiration of six months from the final determination of his deportability on July 24, 1951, he has been subject lawfully only to supervision under these statutory and administrative provisions, and not to

3. *"Supervision after six-month period; regulations; penalty for violation or failure to appear.*

"(b) Any alien, against whom an order of deportation, heretofore or hereafter issued, has been outstanding for more than six months shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall require any alien subject to supervision (1) to appear from time to time at specified times or intervals before an officer of the Immigration and Naturalization Service for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information whether or not related to the foregoing as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case. Any alien who shall willfully fail to comply with such regulations, or willfully fail to appear or to give information or submit to medical or psychiatric examination if required, or knowingly give false information in relation to the requirements of such regulations, or knowingly violate a reasonable restriction imposed upon his conduct or activity, shall upon conviction be guilty of a felony, and shall be fined not more than $1,000 or shall be imprisoned not more than one year, or both."

4. § 150.6 (f) *Title 8, Code of Federal Regulations. Parole supervision beyond six-month period after order of deportation made.* (1) Pending eventual deportation, the officer in charge of any office having custody of an alien against whom an order of deportation has been outstanding for more than six months shall place such alien under parole supervision, requiring among other things that the alien (i) will appear from time to time at specified times or intervals before an officer of the Service for identification; (ii) will submit, if necessary, to medical and psychiatric examination at government expense; (iii) will give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information whether or not related to the foregoing as may be deemed fit and proper; and (iv) will conform to such reasonable written restrictions on his conduct or activities as may be prescribed.

"(2) An alien placed under parole supervision pursuant to this paragraph shall be advised that he will be liable to criminal prosecution for a felony, and may, upon conviction thereof, be fined not more than $1,000 or be imprisoned not more than one year, or both, if he (i) willfully fails to comply with the requirements of such parole supervision; or (ii) willfully fails to appear to give information; or (iii) willfully fails to submit to medical or psychiatric examination if required; or (iv) knowingly gives false information in relation to the requirements of such parole supervision; or (v) knowingly violates any reasonable restriction imposed upon his conduct or activity."

802

detention. It has been urged that this interpretation of the statute runs afoul of the rule against surplusage since economic use of verbiage would effectuate such result merely by use of the word "supervision" alone, rather than by the redundant "supervision and detention" as it appears in the phrase under consideration. Yet application of the identical rule against surplusage would make absurd the contrary construction of the statute so as to permit either detention or release under supervision in the discretion of the Attorney General after six months have expired from the date of final determination of deportability. For such construction would nullify the six month period repeatedly mentioned in the statute. The alien under final order of deportation would be in an identical position after expiration of the six month period as he concededly is during that period with respect to detention in discretion of the Attorney General.

This determination with respect to the rights of Lee Ah Yang does not restrict the administrator from ordering him to produce himself at a time and place reasonably designated in order to effectuate his departure under the order of deportation. Cf. 8 U.S.C.A. § 155. And see Wong Wing v. United States, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140.

Petition denied with respect to Lee Ah Youw and Young Boon Ming.

Petition granted to the extent indicated with respect to Lee Ah Yang.