UNITED STATES ex rel. HYND-
MAN v. HOLTON.

No. 10803.

United States Court of Appeals,
Seventh Circuit.

June 23, 1953.

Pearl M. Hart and Edmund Hatfield, Chicago, Ill., Maurice M. Tulchinsky, South Bend, Ind., for appellant.

Joseph H. Lesh, U. S. Atty., Ft. Wayne, Ind., James E. Keating, Asst. U. S. Atty., South Bend, Ind., Joseph Sureck, U. S. Immigration & Naturalization Service, Detroit, Mich., for appellee.

Before DUFFY and LINDLEY, Circuit Judges, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

Petitioner-Appellant, alleging that she is being unlawfully deprived of her liberty, filed her petition in the District Court for a writ of habeas corpus. From an adverse decision in the District Court she appeals.

On January 5, 1949, appellant was served with a warrant for arrest and deportation under the immigration laws, charging her with membership in an organization that teaches the overthrow by force and violence of the government of the United States, thus rendering her deportable. She was subsequently released on bail and remained on bail until October 7, 1952. On May 9, 1951, a partial hearing was had and it was additionally charged that she was a member of the Communist Party.

On October 7, 1952, before completion of the deportation hearing, appellant was re-arrested on a warrant from the Immigration Service, and she was denied bail and has since been held in custody. On October 16, 1952, the petition for Writ of Habeas Corpus was filed. Answering the petition, respondent, among other things, alleged: "Evidence introduced at petitioner's deportation hearing, and confidential Government reports available to the Immigration and Naturalization service disclose that said petitioner has been an active functionary of the Communist Party and participant in Communist activities, and the respondent has reasonable cause to believe that she will continue in said activity."

The answer further alleged that witnesses had testified to the following facts:

"1. A meter request dated October 16, 1948, in the name of the Communist Party headquarters, 1088 Broadway, Gary, Indiana, signed for the Communist Party headquarters by Katherine Hyndman. This signature was identified to be that of the petitioner.

"2. Testimony of Thomas J. Connor, reporter for the Chicago Tribune, that he was introduced to petitioner as the Organizing Secretary of the Communist Party for Lake County, Indiana, by James West, District Organizer of the Party, in October, 1947, at Communist party headquarters, Gary, Indiana; that he interviewed her as a Communist Party functionary at said headquarters; and that he was given a copy of a radio program sponsored by the Lake County Communist Party, in which petitioner was to participate or in which she had participated.

"3. A souvenir booklet of the Communist party, Illinois State Committee, entitled, 'Socialism is Triumphant in the U. S. S. R.,' dated November, 1937, containing a photograph of Katherine Erlich, Membership Director.

"4. Copies of the Daily Worker, central organ of the Communist Party, United States of America, Section of the Communist International, published in 1935 and 1936, containing articles by Katherine Erlich."

Appellant did not traverse these allegations of the respondent but admitted that a letter, dated June 30, 1939, addressed to the Police Commissioner, Chicago, Illinois, requesting permission to hold an open meeting of the Communist Party of the 11th Ward at a certain place, was prepared and signed by appellant in the name of Katherine Erlich, appellant's maiden name. Appellant also conceded that the testimony in the previous hearings was as indicated in the answer, but denied the right of the government to rely upon undisclosed, confidential government reports made to the Immigration Service. She further admitted that she was arrested on July 1, 1950, at East Chicago, Indiana, while passing out literature issued by the Communist Party of Indiana. The statute provides that in a habeas corpus proceeding the answer, if not traversed, shall be accepted as true, except to the extent that the judge finds

from the evidence that it is not true, 28 U.S.C.A. § 2248.

The decision in this case turns on the authority of the Attorney General, acting through the Immigration Service, to deny bail under the circumstances disclosed. Appellant concedes that discretion resides in the Attorney General in such matters, but avers that in this instance he has acted arbitrarily and without sufficient evidence. She relies largely on the fact that she had been released on bail at the time of her arrest on January 5, 1949, and had at all times been available and present at any time when called for hearing. She asserts that most of the relevant facts upon which the respondent now relies were all within the knowledge of respondent when she was previously released on bail and that no new activities of the appellant have arisen since those facts were known, to warrant a denial of bail.

■ Congress in passing the Internal Security Act of 1950, 64 Stat. 987, 50 U.S.C.A. § 781 et seq., expressed themselves, as follows: Footnote 1. Then they proceed to make membership in the Communist Party a deportable offense. The Immigration and Nationality Act, 8 U.S.C.A. § 1252(a) Footnote 2 also lodges in the Attorney General the discretion of whether the alien shall be admitted to bail. The Supreme Court of the United States in the case of Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547, has upheld the validity of such provisions but has also recognized that in carrying out that policy the Attorney General is not left with untrammelled discretion as to bail. His denial is subject to judicial review and determination.

■ The question before the Court here then becomes one of whether the Attorney General, acting through the Im-

1. "The Communist movement in the United States is an organization numbering thousands of adherents rigidly and ruthlessly disciplined. Awaiting and seeking to advance a moment when the United States may be so far extended by foreign engagements, so far divided in counsel, or so far in industrial or financial straits, that overthrow of the Government of the United States by force and violence may seem possible of achievement, it seeks converts far and wide by an extensive system of schooling and indoctrination. Such preparations by Communist organizations in other countries have aided in supplanting existing governments. The Communist organization in the United States, pursuing its stated objectives, the recent successes of Communist methods in other countries, and the nature and control of the world Communist movement itself, present a clear and present danger to the security of the United States and to the existence of free American institutions, and make it necessary that Congress, in order to provide for the common defense, to preserve the sovereignty of the United States as an independent nation, and to guarantee to each State a republican form of government, enact appropriate legislation recognizing the existence of such world-wide conspiracy and designed to prevent it from accomplishing its purpose in the United States."

2. "Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

migration Service has abused his discretion. In determining this question, we have disregarded the assertion by the Immigration Service that they have confidential reports in reference to appellant which they declined to disclose, as we have no way of knowing what evidence they have except as it appears in the record. We have, therefore, considered only the facts in the record that have been established either by proof, by the pleadings, or by admission. That the department may have at one time admitted appellant to bail and acquiesced in her remaining at liberty on bail for a long period, cannot in itself be a sufficient reason for the allowance of bail on October 7, 1952. Those acting for the department may have concluded that it was poor judgment to have admitted her to bail at any time. Her ready response at all times while on bail is a circumstance that may be considered, but is in no sense controlling in the determination of whether the Attorney General has acted arbitrarily.

From a study of the record we are convinced that the government acted well within a sound discretion, and neither the District Court nor this Court is at liberty to say that its discretion in declining bail was arbitrary and capricious. We have considered the case of Yanish v. Barber, 73 S.Ct. 1105, and cited by appellant in her supplemental brief, and do not deem the situation in that case analogous to our case. We feel that the Carlson case, supra, has completely pointed the decision of all questions before the Court in this case, and on the authority of that case the judgment of the District Court is affirmed.

Affirmed.