## UNITED STATES ex rel. BLANK-ENSTEIN

v.

## SHAUGHNESSY.

United States District Court
S. D. New York.

Dec. 2, 1953.

Ira Gollobin, New York City, for relator.

J. Edward Lumbard, U. S. Atty., Southern Dist. of N. Y., New York City, Harold J. Raby, Asst. U. S. Atty., Lester Friedman, Attorney, Immigration and Naturalization, New York City, of counsel, for respondent.

DIMOCK, District Judge.

Section 242(c) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1252(c), provides that when a final order of deportation is made against any alien "the Attorney General shall have a period of six months from the date of such order * * * within which to effect the alien's departure from the United States * * * ." Relator, an alien who has been detained under a final order of deportation for less than six months, seeks release upon habeas corpus on the ground that it is now clear that it will be impossible to deport him within the six-month period or, indeed, within

the foreseeable future. The Government, citing a further provision of the statute, counters with the statement that it permits court interference with the custody of an alien during the first six months of his detention only in the case where the Attorney General is not proceeding with reasonable dispatch, and that there is no claim that the Attorney General is not doing so here.

My conclusion is that the provision permitting court interference in the case of failure to proceed with reasonable dispatch is not exclusive.

The Government's contention is that under the statute the Attorney General has an arbitrary period of six months to detain the alien against whom an order of deportation has been issued and that, during that period, that detention can be interfered with by a court only upon a showing of failure to proceed with reasonable dispatch to effect the deportation.

The provision fixing the six-month period first appeared in section 23 of the Internal Security Act of September 3, 1950, 64 Stat. 1010, 8 U.S.C. § 156(a). It provided that the Attorney General should have a period of six months from the date of the order within which to effect the alien's departure during which period the alien might be detained or released as might be determined by the Attorney General, and concluded by providing that, if departure of the alien from the United States had not been effected within six months, the alien should "become subject to such further supervision and detention pending eventual deportation as is authorized hereinafter in this section".

The question arose under this section 23 of the Internal Security Act whether the Attorney General was required to release an alien so held at the conclusion of the six-month period. Judge Murphy gave that construction to the statute in United States ex rel. Lee Ah Youw v. Shaughnessy, D.C.S.D.N.Y., 102 F.Supp. 799. In spite of the statement in the statute that, if departure of the alien had not been effected within six months,

the alien should "become subject to such further supervision and detention pending eventual deportation as is authorized hereinafter in this section", Judge Murphy pointed out that the section authorized no detention after the six-month period and held that the reference to detention was surplusage. This conclusion by Judge Murphy, with which I agree, means that the function of the prescribing of a six-month period under the terms of the Internal Security Act was to fix the period after which the alien might not be detained. If we are right, there would be no reason for giving it the additional function of preventing court review of detention during that period. I thus conclude that the Internal Security Act did not affect, even during the initial six-month period, the previously existing power of the courts on habeas corpus to release an alien held for deportation on a showing of sufficient ground for its exercise. One such ground might be that there was no risk of his not being available for deportation when the time for it came. See United States ex rel. Dzuro v. District Director of Immigration, etc., D.C.S.D.N.Y., 102 F.Supp. 704. Another might be that under the circumstances his deportation was impossible or so unlikely of effectuation in the foreseeable future that the detention could not in truth be said to be for deportation. See United States ex rel. Ross v. Wallis, 2 Cir., 279 F. 401, 403–04; Saksagansky v. Weedin, 9 Cir., 53 F.2d 13; Ex parte

Matthews, D.C.W.D.Wash., 277 F. 857; Petition of Brooks, D.C.D.Mass., 5 F.2d 238; United States ex rel. Janavaris v. Nicolls, D.C.D.Mass., 47 F.Supp. 201; United States ex rel. Chu Leung v. Shaughnessy, D.C.S.D.N.Y., 88 F.Supp. 91, 92; Id., D.C., 83 F.Supp. 925, affirmed 2 Cir., 176 F.2d 249. Although some of these cases speak of the illegality of detention for an unreasonable period of time, it is apparent that the court is considering reasonableness in the light of the prospect of successful deportation rather than reasonableness in the light of mere passage of time.

■ Since the passage of the Internal Security Act of 1950, however, the Immigration and Nationality Act has introduced new factors in the problem. Section 242 of that Act confers express authority on the courts to review a determination of the Attorney General concerning detention upon a showing in habeas corpus that he "is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case", (1) to determine deportability, where there has been as yet no order of deportation, or (2) to effect the alien's departure from the United States within the six-month period, where there has been an order of deportation. These provisions as to proceedings before and after the order of deportation are set forth respectively in subdivisions (a) [1] and (c) [2] of section

1. "Sec. 242(a) Pending a determination of deportability in the case of any alien as provided in subsection (b) of this section, such alien may, upon warrant of the Attorney General, be arrested and taken into custody. Any such alien taken into custody may, in the discretion of the Attorney General and pending such final determination of deportability, (1) be continued in custody; or (2) be released under bond in the amount of not less than $500 with security approved by the Attorney General, containing such conditions as the Attorney General may prescribe; or (3) be released on conditional parole. But such bond or parole, whether heretofore or hereafter authorized, may be revoked at any time by the Attorney General, in his discretion, and

the alien may be returned to custody under the warrant which initiated the proceedings against him and detained until final determination of his deportability. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or parole pending final decision of deportability upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability."

2. "Sec. 242(c) When a final order of deportation under administrative processes is made against any alien, the Attorney

242, the pertinent parts of which are set forth in the margin.

I must decide whether this express permission to the courts to review the Attorney General's determination as to release during the six-month period upon a showing that the Attorney General is not proceeding with reasonable dispatch eliminates the pre-existing power of the courts to release within the six-month period aliens whose deportation appears to be impossible of effectuation.

My conclusion is that the introduction by the Immigration and Nationality Act of this express judicial power to interfere within the six-month period where the Attorney General is not proceeding with reasonable dispatch did not eliminate the court's pre-existing power to interfere with detention within that period on other grounds. This question with respect to the power of the courts to interfere during the six-month period after the entry of an order of deportation was noticed but kept open by the Court of Appeals for this Circuit in U. S. ex rel. Nukk v. District Director, 2 Cir., 205 F.2d 242. The question whether the introduction of the provision for express judicial power to interfere prior to the order of deportation eliminated the pre-existing judicial power to interfere on other grounds was decided in the negative by the Court of Appeals for this Circuit in United States ex rel. Yaris v. Esperdy, 202 F.2d 109, 112. In holding that failure to proceed with reasonable dispatch was not the exclusive ground

upon which courts could interfere, Judge Chase said:

"We find nothing which justifies the appellee's argument that § 242 (a) of the Immigration and Nationality Act, which grants the courts authority to review the determination of the Attorney General where it is conclusively shown that he 'is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to determine deportability', does away with all judicial power to review the exercise of discretion under the statute, absent such delay. In the absence of clear language to the contrary, we cannot construe the statute to give the Attorney General unbridled license to exercise his discretion as to detention in whatever arbitrary or capricious way he might see fit, provided only that he act with reasonable dispatch to obtain a decision as to the alien's deportability. On the contrary, we think his discretion as to keeping an alien in custody is judicially reviewable to the same extent it was before. Section 242 provides but an added statutory recognition of a basis for judicial review, not a limitation upon the power as it had existed."

Since I have concluded that, prior to the passage of the Immigration and Nationality Act, the power of the court to interfere during the six-month period

General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States, during which period, at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released on such other condition as the Attorney General may prescribe. Any court of competent jurisdiction shall have authority to review or revise any determination of the Attorney General concerning detention, release on bond, or other release during such six-

month period upon a conclusive showing in habeas corpus proceedings that the Attorney General is not proceeding with such reasonable dispatch as may be warranted by the particular facts and circumstances in the case of any alien to effect such alien's departure from the United States within such six-month period. If deportation has not been practicable, advisable, or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six-month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section."

after the issuance of the order of deportation was just as untrammeled by statute as during the period prior to such issuance, there is only one distinction between the case at bar and the Yaris case. In the case at bar, I must determine to what extent this pre-existing power to interfere on general grounds during the six-month period was affected by the declaration in that Act of the power to interfere on the ground of failure to proceed with dispatch during that period. In the Yaris case, the court had to determine to what extent the pre-existing power to interfere on general grounds during the period before an order of deportation was affected by the declaration in the Act of the power to interfere on the ground of failure to proceed with dispatch during that period.

In view of this distinction arising from the fact that different periods are involved, there is a possible ground for a different decision in the case at bar from that in the Yaris case. To have held in the Yaris case that the failure to proceed with reasonable dispatch was the sole ground upon which the court could interfere would have meant that the Attorney General's substantially "unbridled license" would have lasted for an indefinite period during which he was proceeding with reasonable dispatch to determine deportability. To hold here, however, that failure to proceed with reasonable dispatch is the sole ground upon which the court can interfere during the six months after the date of the order of deportation would mean that the Attorney General's substantially "unbridled license" would last only during the definite, and perhaps shorter, six-month period given him to effect deportation.

I do not believe that the difference is significant enough to justify a holding that Congress, though it used the same words in each case, intended that the Attorney General should have "unbridled license" during the six months after the order of deportation but that he should not have "unbridled license" before the order of deportation.

The Government argues that the legislative history of section 242(c) indicates an intention that the sole ground for judicial intervention should be failure to proceed with reasonable dispatch. It is pointed out that the report of the House Judiciary Committee, in summarizing the part of section 242(c) which added the provision for judicial review where the Attorney General was not proceeding with reasonable dispatch, paraphrased it by saying that the Attorney General's determination against release would be subject to judicial review "only" on a showing of failure to proceed with reasonable dispatch to effect the alien's departure within the six-month period. 2 U.S.Code Cong. & Admin. News 1713 (1952). A similar and still stronger provision in the same report, Id. 1712, to the effect that section 242(a) permits the determination of the Attorney General to be judicially reviewed "only" upon failure to proceed with reasonable dispatch to determine deportability was called to the attention of the Court of Appeals in the Yaris case but did not prevent the holding that failure to proceed with reasonable dispatch was not the only basis on which judicial interference could be permitted.

Footnote 14 in Rubinstein v. Brownell, D.C.Cir., 206 F.2d 449, 453, expresses the view that the part of section 242(c) about failure to proceed with reasonable dispatch is not a limitation upon the power of judicial review.

Finally, on an application for bail pending an appeal by an alien held under a final order of deportation, Mr. Justice Douglas held that the Attorney General's determination under section 242(c) is subject to judicial review, although he indicated that the Government had not claimed otherwise. Yanish v. Barber, 73 S.Ct. 1105.

With the contention that failure to proceed with reasonable dispatch is the sole ground for judicial review out of the way, it remains to apply the law that, as stated at the outset: courts have power to release on habeas corpus an alien held for deportation on a showing

that under the circumstances his deportation is impossible or so unlikely of effectuation in the foreseeable future that the detention cannot in truth be said to be for deportation.

I begin with the proposition that the alien cannot be detained for more than six months after the date of the order of deportation. United States ex rel. Lee Ah Youw v. Shaughnessy, D.C. S.D.N.Y., 102 F.Supp. 799, supra.

The burden is on the alien to show that there is so little likelihood of success in deporting him before the termination of the six-month period that the Attorney General cannot be said in truth to be holding him for deportation before that time. Since the Attorney General must release the alien at the end of six months in any event, it cannot be said that the Attorney General has power to hold during the first six months in order to have the alien available for deportation after the expiration of six months. If, therefore, relator establishes that there is no reasonable likelihood of his deportation within the six-month period he must be immediately released.

In his petition, relator alleges that he left Russia in 1906. He presents considerable evidence in support of his position that the U.S.S.R., the country of his birth and the country to which his deportation has been ordered, will not accept him. He exhibits a copy of his letter requesting an application for a passport to the U.S.S.R. and a photostatic copy of the reply from the Soviet Embassy refusing his request on the ground that the U.S.S.R. issues passports only to its citizens, and that anyone who left Russia before the Revolution of 1917 is not recognized as a citizen of the U.S.S.R. In response to interrogatories propounded in behalf of relator, respondent admits that "the Immigration and Naturalization Service has been unable to deport to the Union of Soviet Socialist Republics in the past twenty-five years any person who gave up residence in Soviet Russia prior to 1917, inasmuch as it has been the position of that government that such

persons are not citizens of Russia." In the return to the writ of habeas corpus, respondent does not deny that relator left Russia before 1917, nor is there a specific denial of this allegation in any of respondent's papers. Respondent does refer, however, to an earlier warrant of deportation issued for this relator in 1924 (a copy of which is attached to relator's petition as Exhibit I) which states that relator landed at an unknown American port in January 1921. Even if this document shows, as respondent contends, that the relator entered this country in 1921, and not in 1906 as he claims, it does not negate the crucial allegation that petitioner left Russia in 1906.

Respondent contends that, even if relator is not now a Russian citizen, and is therefore unacceptable by the U.S.S.R., he can obtain naturalization. I do not find such an obligation stated anywhere in the Immigration and Nationality Act, and in the absence of an explicit requirement that a deportable alien seek foreign naturalization, I cannot infer such a novel and extreme duty of self-deportation. I conclude that relator has established the impossibility of his deportation to the U.S.S.R. within the six-month period or, indeed, within the foreseeable future. I turn then to the likelihood of his deportation elsewhere.

Section 243(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(a), gives the Attorney General power to deport to "any country which is willing to accept such alien into its territory" if deportation elsewhere is "impracticable, inadvisable, or impossible". Relator has presented Congressional Committee reports and statements of Immigration officials to the effect that the "Iron-Curtain" countries have generally refused to accept "subversive" aliens, and that no "subversive" aliens of Russian origin, like relator, have ever actually been physically deported. Respondent deposes that Poland has recently accepted several non-Polish "subversive" deportees. Apparently, however,

none of those accepted was a native of a Communist country.

Thus far the Attorney General has been no more successful in inducing the non-Communist countries to accept these aliens whom we label a threat to the security of democratic institutions. Nevertheless, I have no basis for saying that, at any moment, some new international agreement will not be made with some nation of the free world for the acceptance of a deportable alien like relator. Certainly the relator here has not made a showing which excludes the possibility of such an event within the six-month period.

Writ dismissed.