**Manuel CASTILLO–GRADIS, Petitioner,**

v.

**James TURNAGE, District Director, Immigration and Naturalization Service, Respondent.**

**Civ. No. 90–1423–K.**

United States District Court, S.D. California.

Dec. 19, 1990.

**938**

zation Service (INS) through the California Department of Corrections while serving a sentence for sale of cocaine. On April 2, 1990, after completing his sentence for the cocaine conviction, he was transferred to INS custody. Following a hearing before an immigration judge on April 6, 1990, he was ordered deported from the United States. Castillo chose not to appeal this order. Petitioner was then transferred to the INS detention facility at El Centro, California to await the execution of his deportation. He remains at this facility.

The processing of petitioner's deportation did not begin until approximately a month after the order of deportation was entered. On May 9, 1990, the INS office in San Diego requested authorization from INS Headquarters in Washington to execute the deportation order pursuant to the procedures of the Nicaraguan Review Program. Under this program, the Attorney General reviews all cases of Nicaraguans ordered deported to ensure that they do not qualify as refugees under the Refugee Act of 1980. Before a Nicaraguan is deported, the INS district holding the Nicaraguan must receive authorization from the Deputy Attorney General in Washington.

While the Deputy Attorney General reviewed petitioner's case, the INS office in San Diego made other preparations for petitioner's departure. It was not until October 5, 1990, however, that the INS district director in San Diego received telephonic notification from the Deputy Attorney General in Washington that it should proceed with petitioner's deportation. On October 9, the INS district director made reservations for petitioner to return to Nicaragua by commercial airline on Wednesday, October 24, 1990.

On October 10, 1990, the INS district director sent by facsimile to INS headquarters the details of petitioner's departure. Per an agreement with the Nicaraguan consulate, such information must be relayed to them 15 days prior to the actual date of departure.

Petitioner filed the instant Petition for Writ of Habeas Corpus with this court on October 16, 1990. Because of the prima

David Rabin and Kristin White, El Centro Asylum Project, El Centro, Cal., for petitioner.

Samuel Bettwy, Sp. Asst. U.S. Atty., San Diego, Cal., for respondent.

## MEMORANDUM DECISION

KEEP, District Judge.

## FACTUAL BACKGROUND

Petitioner is a citizen of Nicaragua who entered the United States without inspection sometime in 1980. He came to the attention of the Immigration and Naturali-

facie case made out by petitioner for relief, this court ordered an expedited briefing schedule and hearing on this matter.

## DISCUSSION

■ This court has jurisdiction to review the terms of detention under which an alien is held following a deportation order pursuant to 8 U.S.C. § 1105a(a)(9) or 28 U.S.C. § 2241. *See, e.g., Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382, 1390 (10th Cir. 1981).

Petitioner brings this writ of habeas corpus on the grounds that his current detention is in violation of 8 U.S.C. § 1252(c). This statutory provision reads in pertinent part:

When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or, if judicial review is had, then from the date of the final order of the court, within which to effect the alien's departure from the United States.... If deportation has not been practicable, advisable or possible, or departure of the alien from the United States under the order of deportation has not been effected, within such six month period, the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized in this section.[1]

A deportation order was entered against petitioner on April 6, 1990. Petitioner waived his right to appeal at that time; thus the order became final as of April 6. *See* 8 C.F.R. § 3.37. On October 6, 1990, the six month period within which petitioner's deportation was to be effected by the Attorney General under 1252(c) expired. Consequently, petitioner contends that he should now be released from custody until his deportation is to be executed.

The question presented by this case is whether and under what conditions the government may detain an alien beyond the six-month period allowed under 1252(c) pending the execution of his deportation.

■ The government first contends that its further detention of petitioner is justified under the statute because of the extenuating circumstances caused by the Nicaraguan Review Program. It suggests that the requirements of this program made petitioner's deportation "impracticable" or "impossible" within the six-month period.

■ While it is laudable that the government has chosen to review the cases of deportable Nicaraguans to screen for refugees, the court finds that this is not the sort of circumstance that the statutory exceptions to the six month period should encompass. The Attorney General should not be allowed to use the grounds of "impracticability" for programs and procedures that are fully within his control. If such were the case, the Attorney General could regularly hold deportable aliens beyond the six month period by creating procedures that complicate the review and execution of these deportations. This would undercut the very purpose of the six month time limit established by 1252(c). For "impracticability," "inadvisability" or "impossibility" to be used as a basis for holding an alien beyond the six month period, it must derive from a factor or circumstance outside the Attorney General's control.

■ Second, the government argues that the language of 1252(c) implies that Congress contemplated the possibility of detention beyond the six month period for reasons other than those explicitly mentioned in the subsection. In particular, it points to

---

1. The nature of the supervision that may be exercised over an alien once the six month period has expired is specified in 8 U.S.C. § 1252(d). The INS may require the alien

"(1) to appear from time to time before an immigration officer for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information, whether or not related to the foregoing, as the Attorney General may deem fit and proper; and (4) to conform to such reasonable restrictions on his conduct or his activities as are prescribed by the Attorney General in his case."

*See* 8 U.S.C. § 1252(d).

the language that makes the alien "subject to such further supervision and detention pending eventual deportation as is authorized in this section" once the six-month period has expired. However, the details of such further detention are not discussed elsewhere in 8 U.S.C. § 1252.

On the basis of case law, the government argues that such further detention is justified when "unusual circumstances" are present. In *Senter v. Colarelli,* 145 F.Supp. 569 (E.D.Mo.1956), a district court held that 1252(c) "does not authorize detention of a deportable alien for more than six months after the order of deportation becomes final, except perhaps under unusual circumstances." *Id.* at 575. However, the only unusual circumstance referred to in that case, or ever relied on by other courts, is when the actions of the deportable alien are solely responsible for the delay. *See, e.g., Dor v. District Director,* 891 F.2d 997, 1002 (2d Cir.1989), *United States ex rel. Cefalu v. Shaughnessy,* 117 F.Supp. 473, 474 (S.D.N.Y.1954), *aff'd,* 209 F.2d 959 (2d Cir.1955). Thus, the "unusual circumstances" exception recognized by these cases is more appropriately construed as the "delay-caused-by-the-alien" exception. Since petitioner has had nothing to do with the delay of his deportation in the instant matter, such an exception does not apply here.

■ Assuming, without holding, that a different sort of unusual circumstance may justify further detention, such an exception should apply to the rare case, not an entire class of aliens. Accepting the argument that the administrative burdens of ensuring that Nicaraguans do not qualify as refugees would allow the INS to detain all deportable Nicaraguans for longer than six months. Such an interpretation would severely undercut the plain language of the statute.

■ Third, relying on *Shrode v. Rowoldt,* 213 F.2d 810 (8th Cir.1954), the government argues that detention beyond

the six month period may be permitted if provided for in the regulations promulgated under the authority of 8 U.S.C. § 1252. *Id.* at 813. In particular, the government points to 8 C.F.R. § 242.2(d), which provides in pertinent part:

> After a deportation order becomes administratively final, or if recourse to the Immigration Judge is no longer available ..., the respondent may appeal directly to the Board from a [custody status or bond] determination by [the INS District Director] except that no appeal shall be allowed when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose.

The government argues that the latter portion of this provision implies that when the INS is on the verge of executing a deportation, it may retain custody of the deportee even though the six-month period under 1252(c) has expired.

This is an implausible reading of this regulation since its clear purpose is to specify the constraints on appealing a custody or bond determination, not to identify the bases on which detention may be continued beyond the six-month period established by 1252(c).[2] Moreover, even if this regulation could be construed to apply to 1252(c), it is clear that retaining perpetual custody of the alien is not necessary to effect a deportation. The INS does not need custody over an alien until it is truly "ready" to execute such deportation.

■ Fourth, the government asserts that it has been the longstanding, unchallenged practice of the INS to continue detention of an alien beyond the six month period so long as "the alien is completely ready for deportation and scheduled deportation is imminent." *See* INS Deportation Officer's Handbook, 44. In support of this position, the government relies on *United States ex rel. Lam Tuk Man v. Esperdy,* 280 F.Supp. 303 (S.D.N.Y.1967). In that case, the district court denied an alien's challenge to his

---

**2.** In fact, 8 C.F.R. § 242.2(f) appears to be more directly on point and suggests just the opposite of what the government argues. It reads:

> (f) *supervision.* Until an alien against whom a final order of deportation has been outstanding for more than six months is deported, he shall be subject to supervision....

detention under 1252(c) but granted the petitioner's release on bail. *Id.* at 304. The court justified its grant of bail in part on the grounds that "[t]he final determination of the [petitioner]'s case does not appear to be imminent." *Id.* at 304–05.

The decision of *Lam Tuk Man*, however, is not applicable to the instant case. In that case, the court took into account the imminence of a final determination of the alien's case for the purpose of determining whether the alien should have been released on bail, not whether he should be granted relief under 1252(c). *Id.* The decision as to whether or not to release an alien on bail pending the adjudication of his case is discretionary. *See* 8 C.F.R. § 242.2(d). Here, the issue is not whether petitioner should be released on bail, but whether the government may hold someone beyond the statutorily designated six-month period. By the language of the statute itself, such a determination is clearly not a discretionary one.

Further, the fact that it has been the longstanding, unchallenged practice of the INS to detain people beyond the six month period so long as their deportation is imminent does not validate such a procedure. Procedures, particularly when they implicate a person's freedom, must be solidly grounded in law. The government has not shown that this one is.

■ Finally, the government contends that a plain reading of 8 U.S.C. section 1252(c) does not apply to deportations that are "imminent at an ascertainable date." In support of this interpretation, the government points to the term "eventual" used in the statute and contrasts this term with the term "imminent." It contends that an eventual deportation is one that will happen in the unspecified future; an imminent one is one that is ready to take place. The government's position is that use of the term "eventual" means that Congress intended to treat differently those aliens such as petitioner whose deportation is "imminent" from those aliens whose deportation is only "eventual."

The court rejects this argument. To infer that Congress would permit detention beyond the six-month period from its use of one word contradicts the central purpose of this statutory provision. Had Congress wished to make an exception to the six-month period for those aliens whose deportation is imminent, it could have done so plainly.

■ In sum, the court finds that the plain meaning of 8 U.S.C. § 1252(c) is that, absent a showing of impractibility, inadvisability, impossibility, or delay caused by the alien's own actions, the Attorney General has six months to detain an alien in order to execute his deportation. Once the six months has expired, the alien must be released and put under supervision until the INS is ready to execute his deportation. Such a holding is consistent with existing case law on this issue, *see Shrode v. Rowoldt*, 213 F.2d 810, 813–14 (8th Cir.1954), *United States ex rel. Blankenstein v. Shaughnessy*, 117 F.Supp. 699, 704 (S.D.N.Y.1953), and *United States ex rel. Lee Ah Youw et al. v. Shaughnessy*, 102 F.Supp. 799, 801–02 (S.D.N.Y.1952), as well as faithful to the congressional intent behind this statutory subsection. *See* H.R.Rep. No. 1365, 98th Cong., *reprinted in* 1952 U.S.Code Cong. & Admin.News 1653, 1713 ("[A]fter entry of a final order of deportation, the Attorney General shall have a period of 6 months from the date of such order within which to effect the deportation of the alien, during which period the alien may be detained. . . . If deportation has not been practicable within such period, the alien becomes subject to further supervision under such regulations as may be prescribed by the Attorney General.") Moreover, the Ninth Circuit has recently expressed a similar view, albeit in dicta. *Flores v. Meese*, 906 F.2d 396, 398 (9th Cir.1990) ("After six months has elapsed, the Attorney General must release the deportable alien but may thereafter supervise him.")

The reasoning behind this strict interpretation of the six-month period was originally put forth in the case of *Lee Ah Youw*, 102 F.Supp. at 800. As the court explained, the six-month statutory limit was intended to supplant the previous regime in

which the Attorney General had the discretionary power to hold an alien indefinitely pending the "final disposal of the case." *Id.* To construe the language of the new statute to permit detention beyond the six month period, the court reasoned, would nullify its very purpose. *Id.* at 802.

Therefore, on the basis of a plain reading of 8 U.S.C. § 1252(c) and its accompanying subsections, the court orders that petitioner be released and placed under supervision until the execution of his deportation.

IT IS SO ORDERED.