UNITED STATES ex rel. HAUM PON v. SISSON.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 98.

1. ALIENS ⬳32(13)—EXCLUSION OF CHINESE—DECISION AS TO CITIZENSHIP.

The decision of the Secretary of Labor that a Chinese held for deportation is not a citizen of the United States is final, unless it appears that the Secretary acted unlawfully, improperly, or abused his discretion.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. ⬳32(13).]

2. ALIENS ⬳32(10)—EXCLUSION OF CHINESE—DEPORTATION TO "COUNTRY WHENCE HE CAME."

A Chinese, who comes into the United States from Canada without being entitled to remain here, will be deported, not to China, but to Canada, the "country whence he came."

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. ⬳32(10).]

3. EVIDENCE ⬳15—JUDICIAL NOTICE—BIRTHPLACE OF ALIENS.

The court can take judicial notice that all Frenchmen are not born in France, all Germans in Germany, all Italians in Italy, all Japanese in Japan, and all Chinese in China.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. ⬳15.]

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Haum Pon, alias Charlie Haum, alias Lee Hum, against Harry R. Sisson, Chinese Inspector in Charge, District of New York and New Jersey. From an order of the District Court for the Southern District of New York (222 Fed. 693), dismissing the writ, and remanding relator to the custody of respondent, to be deported, relator appeals. Order of deportation amended and affirmed.

Appeal from an order entered May 4, 1915, dismissing a writ of habeas corpus which had been issued to inquire into the detention of the appellant. The order remanded the appellant to the custody of the appellee to be deported to China, "the country whence he came."

Robert M. Moore, of New York City (B. W. Berry, of New York City, of counsel), for appellant.

H. Snowden Marshall, U. S. Atty., of New York City (Harold A. Content, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

COXE, Circuit Judge. [1] It is conceded that Haum Pon is not entitled to remain in the United States the only question is whether he should be deported to China or to Canada. He was arrested at Tonawanda, N. Y., by the local police authorities on January 21, 1915, and on the following day a warrant was issued by the Acting Secretary of Labor under which he was taken into custody and several hearings were had at which testimony was given showing that the appellant, with four other Chinese persons, was found on the night of January 21, 1915, under a bridge near the shore of the Niagara river. Footprints in the snow indicated that they had crossed the river in a boat which was found on the river bank. In addition to this, four witnesses identified the appellant as a man they saw in Canada a few days prior to the arrest. It is unnecessary to consider further the evidence relating to the appellant's entry into this country, as we agree with the district attorney that "the proof that he entered the United States from Canada is overwhelming." We also agree with him that the proof fails to establish the appellant's citizenship in the United States and, in any event, the decision of the Secretary of Labor adverse to citizenship is final unless it appears that he acted unlawfully, improperly or abused his discretion. U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040; Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369.

[2] We have then the case of a Chinese person in the United States having come here from Canada and not being entitled to remain here. In Moore v. Sisson, 206 Fed. 450, 124 C. C. A. 356, where the facts were almost identical with those in the case at bar, we held the following propositions:

First. The relators are Chinese persons not permitted by law to remain in this country.

Second. The country from whence they came is Canada.

Third. There is no evidence that they came from China; the contention that they did do so is based solely upon conjecture and presumption.

We therefore directed that the aliens be returned to Canada. No difference of importance is suggested upon the facts and we see no reason for departing from our former decision.

We are referred to the recent case of Lewis v. Frick, 233 U. S. 291, 34 Sup. Ct. 488, 58 L. Ed. 967. In that case the petitioner was a Russian who came to this country in September, 1904, entering at the port of New York and lived in or near that city till 1910, when he removed to Detroit and made his home in that city. On November 17, 1910, he crossed the Detroit river to Windsor, Canada, and brought back with him a woman who, as was subsequently found by the Secretary of Commerce and Labor, was brought to Detroit for an immoral purpose. Subsequently, after indictment and trial he was found guilty and deported to Russia, the court observing:

"Upon the whole, it seems to us that the act reasonably admits of his being returned to the land of his nativity, that being in fact 'the country whence he came' when he first entered the United States."

The difficulty with this case is its want of resemblance. If it had been shown that this appellant was born in China and came here from

China and had committed an offense against our laws while in this country, the doctrine of Lewis and Frick would be applicable. But in the case at bar we know nothing regarding the appellant except that he is, apparently, a Chinese person and that he entered the United States at Tonawanda, Erie county, N. Y., coming direct from Canada.

[3] Under a harsh and drastic law like the one under consideration, there is no obligation on the part of the accused to say anything. He may stand mute if he so desires. There is no presumption that he was born in China because he says nothing on the subject. He may have been born in Canada or even in this country. The fact that Canadian law will not permit that country to receive a Chinese person unless he pays a tax cannot be considered in construing our own statutes. If this Chinaman came here from Canada, and the proof is that he did, that fact is not changed by the refusal of Canada to permit his return there. So far as proof is concerned, there is absolutely nothing to show that he was born in China or that he came from China or that he was ever in China, and yet if this writ be dismissed the appellant will be sent there on mere presumption. It is known that he came from Canada and that is all that is known about him. If the situation creates a legal empassé it is for Congress and not the courts to supply the necessary legislation. In the present age, when the nations are linked together by railroads and steamship lines, when there is practically no habitable unexplored territory, when Asiatics and Africans are found in all the large cities of Europe and America, it is impossible to tell by the mere inspection of a man where he was born or from whence he came. We can take judicial notice of the fact that all Frenchmen are not born in France, all Germans in Germany and all Italians in Italy. We know that all Japanese are not born in Japan. We know that all Chinese are not born in China. The finding that this appellant came from China is not based on proof but on guesswork and conjecture. We think this case cannot be distinguished from Moore v. Sisson.

The order of deportation is amended by providing that the appellant be deported to Canada, and, as so amended, is affirmed.