## UNITED STATES ex rel. ROSS v. WALLIS, Immigration Com'r.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 105.

1. **Aliens ☞54—Habeas corpus ☞92(1)—Question of alienage is one of fact, and court can only determine legality of departmental action.**

In a proceeding to deport an alleged alien, the question whether he was born in the United States or a foreign country is one of fact for determination by the Department of Labor, and on habeas corpus the court can only examine the legality of the departmental action.

2. **Aliens ☞54—Hearsay evidence may be admitted in departmental proceeding to deport.**

In deporting an alien, the Department of Labor is not bound by rules of evidence, and may admit hearsay evidence; the only limitation on its procedure being that the hearing, though summary, shall be fair.

3. **Evidence ☞322(1)—Hearsay evidence admissible to prove place of birth or death.**

Even in the common-law courts, hearsay evidence is admissible to prove "pedigree," which includes the place of birth or death.

4. **Aliens ☞54—Evidence of defendant's claim of foreign birth held to sustain burden of showing alienage.**

Assuming that, in a proceeding to deport an alleged alien, the burden of proof of alienage was on the Department of Labor, evidence that for nearly half a century he maintained that he was born in Scotland, and that during that period his relation to the United States was continuously that of an alien, sustains such burden.

5. **Aliens ☞53—Indefinite imprisonment while awaiting opportunity for deportation not authorized.**

The right to deport an alien does not include any right of indefinite imprisonment under the guise of awaiting an opportunity for deportation.

6. **Aliens ☞53—Must be deported within a reasonable time, which in the case of the British Isles is not over four months.**

A deportation order requiring the proper official to return an alien to the country whence he came, and for that purpose to purchase transporta-

tion for him, means that the transportation is to be obtained and the deportation effected within a reasonable time, and peace having been declared and regular communication with the British Isles re-established, four months after an alien has exhausted his legal remedies is a reasonable time, and imprisonment beyond that period is unlawful.

7. **Evidence ⚷⟞11—Court takes notice of declaration of peace and re-establishment of regular communication with British Isles.**
   The court takes cognizance of the fact that peace has been declared and regular communication with the British Isles re-established.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on relation of McGregor S. Ross, against Frederick A. Wallis, Commissioner of Immigration at New York City. From an order dismissing the writ, relator appeals. Affirmed.

Ross prayed a writ of habeas corpus on the ground that he "verily believed that he was born in the United States," and yet was held in custody by the respondent as Immigration Commissioner and so held for deportation to Scotland in accordance with a warrant issued by the Secretary of Labor dated May 25, 1920, which document recited that Ross after due hearing had been found an alien remaining in the United States in violation of the Act of Congress of October 16, 1918 (Comp. St. Ann. Supp. 1919, §§ 4289¼b[1] to 4289¼b[3]), in that he (Ross) "advocates the unlawful destruction of property, and that he teaches the unlawful destruction of property." The warrant also recited that he had landed in the United States at the port of Blaine, Wash., on or about July 15, 1914, and concluded by ordering respondent "to return the said alien to Scotland, the country whence he came." The return to the writ set up these facts, together with the evidence upon which the Department of Labor had acted.

The relator traversed the return upon various grounds, none of which is now material, except that he denied "that he was a native of Scotland, and that there was any competent legal proof whatever of his Scotch nationality or nativity." The District Court discharged the writ and remanded the relator, who took this appeal. By stipulation of parties the record here presented contains only so much of the evidence or proceedings "as relates to the question of alienage," and by said stipulation it was further agreed that the matter submitted "for argument in this court [was] solely the question of alienage."

Charles Recht, of New York City (Isaac A. Hourwich, of New York City, of counsel), for appellant.

William Hayward, U. S. Atty., of New York City (Herman L. Falk and John Holley Clark, Jr., Asst. U. S. Attys., both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The stipulation just referred to obliges us to assume that in every respect, except the place of his birth, the relator is a fit subject for deportation.

[1, 2] The only inquiry before us is: Where was Ross born? This being a question of fact, its determination has been committed by Congress, not to the courts, but to the Department of Labor. Judicial inquiry is by habeas corpus alone; under that writ we can only examine the legality of departmental action, and that under the statute

---

⚷⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the department is not bound by the "rules of evidence" is firmly established. Morrell v. Baker (C. C. A.) 270 Fed. 577, and cases cited. Since the only legal limitation upon departmental procedure is that a hearing, fair, though summary, must be accorded, hearsay evidence is admissible. Cases supra.

[3] But, even if Ross had been tried in a common-law court on the issue here tendered, hearsay would have been admissible, because the place of birth or death is comprehended in the term "pedigree," concerning which hearsay is always admissible. Wigmore, § 1502.

[4] The argument for appellant rests largely on the assertion that the burden of proving Ross' alienage was on the department, and that burden was not borne. United States v. Dart (D. C.) 251 Fed. 394. Whether in a proceeding of this nature, without rules of evidence and with no rigid procedure, the phrase "burden of proof" is of any importance, is a point we need not discuss, and one upon which no opinion is expressed.

But, assuming that the burden of proof was upon the Department, the evidence submitted to us clearly shows that for nearly half a century Ross maintained that he was born in Scotland, and during that period his relation to the United States was continuously that of an alien. He only became ignorant concerning his nativity and race after he appreciated the possible, if not probable, effect upon him of the vigilance of the Department of Labor. A board of inquiry, confronted with several decades of consistent assertion of Scotch birth, might well give credence to such assertions, as against the mere ignorance of later years.

The order appealed from is affirmed; but there remains a matter disclosed rather by admissions at bar than by anything in the appeal book. In respect of this relator there appears to exist a situation not unlike that which existed in regard to Chinese, who entered the United States from Canada before recent changes in the exclusion statute. See United States v. Sisson, 230 Fed. 974, 145 C. C. A. 168. As there was a time when Chinese persons who had entered from Canada could be deported to Canada only, and Canada refused to receive them, so it is here suggested that Scotland is the only country to which Ross can be deported, and that the representatives of Great Britain refuse him the passport necessary to land.

[5] Though this record does not demand present decision on this question, it is pointed out that the right to deport does not include any right of indefinite imprisonment under the guise of awaiting an opportunity for deportation.

[6, 7] This and every other deportation order requires the proper official to return the alien to "the country whence he came," and for that purpose "to purchase transportation for the alien." Under familiar law, this necessarily means that the transportation is to be obtained and the deportation effected within a reasonable time. What is a reasonable time varies with circumstances; during the World War it was a matter of even judicial cognizance that opportunities for deportation were rare and long delayed. We now take cognizance of the fact that peace has been declared, and regular communication with

the British Isles re-established, and we therefore express our opinion that unless this relator, or any other person similarly situated, be actually deported within four months after such alien has exhausted his legal remedies, any further or other detention under pretense of awaiting opportunity for deportation would amount, and will amount, to an unlawful imprisonment, from which relief may be afforded by a new habeas corpus.