**Kestutis ZADVYDAS, Plaintiff,**

**v.**

**John B.Z. CAPLINGER and Immigration and Naturalization Service, Defendants.**

**Civil Action No. 96-0810.**

United States District Court, E.D. Louisiana.

Oct. 30, 1997.

Robert F. Barnard, Federal Public Defender, New Orleans, LA, for Kestutis Zadvydas.

Matilda Ann Baker, U.S. Immigration & Naturalization Service, New Orleans, LA, Kathryn Weekley Becnel, U.S. Atty.'s Office, New Orleans, LA, for John B.Z. Caplinger, Immigration and Naturalization Service.

### ORDER AND REASONS

FALLON, District Judge.

Before this Court is petitioner Kestutis Zadvydas' objection to the report and recommendation of United States Magistrate Judge Louis Moore, Jr., which recommends that the petitioner's application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, be denied. For the reasons that follow, the petitioner's objection is sustained in part, in that the Court finds that the petitioner's detention pending deportation violates his right to substantive due process, and denied in part, in that it is denied in all other respects. The petition for writ of habeas corpus is GRANTED subject to the conditions hereinafter described.

### I.

### BACKGROUND:

The petitioner was born on November 21, 1948 in a displaced persons' camp in a region of Germany governed by the United States following World War II. His parents were from Lithuania but it is not clear whether either or both were ever citizens of that country.[1] In 1956, at the age of 8, petitioner was admitted to the United States in connection with a program for the relocation of displaced persons.

On December 8, 1966 petitioner was convicted in the New York Supreme Court, Queens County, of attempted robbery, third degree. On February 7, 1974 he was convicted in New York Supreme Court, Kings County, for attempted burglary, third degree.

The Immigration and Naturalization Service (INS) issued an order to show cause on July 6, 1977 charging petitioner as deportable. On July 13, 1977 petitioner was granted release on his own recognizance and allowed to remain at large pending disposition of his deportation case.

In July 1982 the INS notified petitioner that his hearing before an immigration judge had been rescheduled to August 25, 1982. He failed to appear for his August hearing. He was not heard from for 10 years. INS sent registered letters to his last known address in an attempt to find him. Petitioner apparently moved and claims he never received the letters. During this decade he married, parented a child, was gainfully employed, filed income tax returns, and obtained an extension or reissuance of his immigration card (green card).

On August 17, 1992 petitioner was convicted in Circuit Court of Fairfax County, Virginia for a 1987 offense of possession of a controlled drug (Cocaine) with intent to distribute. Petitioner turned himself in to the police in Houston and was removed to Virginia where he faced the drug charges which

---

1. His mother denies ever being a Lithuanian citizen.

led to his conviction. He was sentenced to serve 16 years with 6 years suspended. He served 2 years of his sentence and was released on parole in January 1994. He was immediately taken into custody by the INS and deportation proceedings were begun again. The INS detained the petitioner without bond based upon his aggravated felony conviction. A bond determination hearing was held and the Immigration Judge denied the petitioner's request for a change in status ordering that he remain in custody without bond. The Immigration Judge based this decision on the likelihood that the petitioner would fail to appear for future immigration hearings because of his prior history. The Board of Immigration Appeals (BIA) denied petitioner's appeal.

On March 29, 1994, petitioner's deportation hearing was held. He admitted all allegations and was found deportable. Seeking relief from deportation, the petitioner applied for a waiver under the Immigration and Nationality Act, which was denied on April 26, 1994. The petitioner was ordered deported from the United States to Germany.

In May of 1994, the INS Officer-in-Charge (OIC) in Oakdale, Louisiana began the petitioner's deportation which, as of today, has still not occurred. Although the petitioner immigrated from Germany and represented to the Immigration Judge he was a German citizen, the German government informed the INS that the petitioner is not a German citizen. Rather, he was born in a German holding camp; his parents were once residents of Lithuania. Lithuania has also denied the petitioner's citizenship. Thus, the petitioner is "stateless" and is being detained indefinitely since the INS is unable to find a country that will claim him.[2]

The petitioner has applied to this Court for habeas corpus relief on grounds that his indefinite detention pending deportation is unconstitutional. The petitioner asserts the following arguments: 1) that he never made a knowing waiver of his constitutional rights, including his right to counsel; 2) that his detention violates international law; 3) that his detention violates due process; 4) that his

detention is in effect one for life and thus violates the Eighth Amendment's prohibition against cruel and unusual punishment.

After a thorough review of the record, Magistrate Judge Louis Moore recommended that the petitioner's request for habeas corpus relief be denied. Judge Moore found that the continued detention of the petitioner was statutorily authorized and that the Attorney General did not abuse her discretion in detaining the petitioner. Judge Moore based his finding on the petitioner's prior failure to appear for his initial deportation proceeding and his prior convictions. In addition, Judge Moore found that the petitioner participated knowingly in his proceeding and that his waiver of his right to counsel was voluntary. Lastly, Judge Moore found that neither International Law nor the Eighth Amendment were violated. Because the INS' efforts to deport the petitioner remained ongoing, Judge Moore reasoned that the petitioner was not being arbitrarily imprisoned for an indefinite amount of time.

The petitioner now moves this Court to reconsider Judge Moore's report and recommendation under 28 U.S.C. § 636(b)(1)(C). Petitioner asserts that Judge Moore erred in finding that petitioner's original hearing comported with due process and in finding that petitioner's detention was constitutional. The INS urges its original arguments but also asserts that, because of the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Judge Moore as well as this Court has no jurisdiction to review any claims stemming from the petitioner's deportation order.

## II.

### JURISDICTION OF THE COURT

Before considering the merits of this cause, it is incumbent on the Court to first address the jurisdictional issue.

■ The Illegal Immigration and Reform and Immigrant and Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, signed into law by President Clin-

---

**2.** At the time of this writing the petitioner was still being held pending deportation. As of Octo-ber 1997 the petitioner has been detained for three years and nine months.

ton on September 30, 1996, entirely redefined the scope and/or availability of judicial review of immigration orders and decisions. Section 306 of the IIRIRA rewrote 8 U.S.C. § 1252 (§ 242 of the Immigration and Nationality Act) and provides limits on judicial review of immigration matters. Section 242(g) of the Immigration and Nationality Act ("INA"), as amended by IIRIRA, provides as follows:

> (g) EXCLUSIVE JURISDICTION. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under [the Immigration and Nationality Act ("INA")].

See IIRIRA § 306. Most of the amendments to the INA made pursuant to the IIRIRA do not effect habeas corpus petitions filed prior to the effective date of April 1, 1997. Section 1252(g), however applies retroactively, "without limitation to claims arising from all past, pending or future exclusion, deportation or removal proceedings." *Dorean Vayspitter v. United States General Attorney*, 1997 WL 299372, *3 (E.D.La. June 3, 1997); IIRIRA section 306, as amended October 11, 1996 Pub.L. No. 104–302, 110 Stat. 3656, 3657.

Because of Section 1252(g), the Government contends that under the clear terms of § 242(g) of the INA, as amended by the IIRIRA, this Court lacks jurisdiction to entertain the petitioner's claims. In support of their contention, the government cites two recent decisions, *Yang v. I.N.S.*, 109 F.3d 1185 (7th Cir.1997) and *Safarian v. Reno*, 968 F.Supp. 1101 (E.D.La. 1997). In *Yang*, the Seventh Circuit held that under § 242(g) the district courts are precluded from exercising jurisdiction over deportation–related matters pursuant to 28 U.S.C. § 2241 or any other provision of law. In so holding, the *Yang* court emphasized that, "Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review, not to delay removal by requiring aliens to start the review process in the district court rather than the court of appeals." *Yang*, 109 F.3d at 1195. Next, the government cites *Safarian*, supra, in which the United States District Court for the Eastern District of Louisiana held that, "the express provisions of the IIRIRA clearly remove jurisdiction under any statute, including a right to habeas corpus under § 2241." According to the Government, only by divesting the federal courts of the power to review agency decisions through the writ of habeas corpus will the "streamlined appeal and removal process" intended by Congress be achieved. H.Rep. No. 104–469(I), 104th Cong., 2d Sess. 359, 463 (1996) (reproduced at 1996 WL 168955).

In his supplemental memorandum on jurisdiction the petitioner argues that this Court has the power to review through the writ of habeas corpus. Despite the enactment of the IIRIRA, the petitioner maintains that this Court retains habeas corpus jurisdiction under 28 U.S.C. § 2241 or Art. I, § 9, cl. 2 of the Constitution. The petitioner contends that this Court has habeas jurisdiction under 28 U.S.C. § 2241 because § 242(g) of the INA, as amended by the IIRIRA, does not effectively eliminate this habeas review. In the alternative, the petitioner contends that even if the IIRIRA validly eliminates the federal courts' habeas review under 28 U.S.C. § 2241, review is nevertheless available under the constitutional writ, unaided by statute.

### A. History of Habeas Corpus

It is appropriate at this point to review the historical development of habeas corpus. The history of the right of personal liberty began before the writ of habeas corpus originated. The right was granted, at least to some English subjects, by Article 39 of Magna Carta, which provided that no free man should be arrested, imprisoned, or destroyed except by the judgment of his peers or by the *law of the land.* Magna Carta, Art. 39. The essence of this article has been traced back through English law books of the Twelfth Century to documents of the Holy Roman Empire of the Eleventh Century. Richard L. Perry and John C. Cooper, *Sources of Our Liberties,* p. 5 (1978). Although there has been scholarly dispute on

the subject, as early as the Fourteenth Century the "law of the land" provision was considered to be the equivalent of "due process of law". Richard L. Perry and John C. Cooper, *Sources of Our Liberties,* p. 189 (1978); William S. Hollsworth, *A History of English Law,* 4th ed., Vol. 1, pp. 60–63 (1931). In addition, the protection of this provision was extended to all citizens and not just to the "freemen" who were a limited group of land barons. William S. Holdsworth, *A History of English Law,* Vol. 1, p. 227 (4th ed. 1931); *Ex Parte Yerger,* 75 U.S.(8 Wall.) 85, 96, 19 L.Ed. 332 (1868).

In America the Colonist claimed the writ as one of the "rights of Englishmen" to which they were entitled under their charters and by reason of the common law. As a result, the privilege of the writ of habeas corpus was incorporated into the constitutions adopted by the states at the time of the American Revolution. *See,* e.g., *Constitution of Pennsylvania,* Art. IX (1776). *Constitution of Maryland,* Art. XXI (1776).

B. *Habeas Corpus Protected by Constitution*

Habeas corpus is referenced in the Constitution of the United States. Because the writ of habeas corpus plays such a central role in protecting individual liberty, the framers provided in Art. 1, § 9, cl. 2 of the Constitution that "the privilege of the Writ of Habeas Corpus shall not be suspended [except during times of rebellion]."

C. *Habeas Jurisdiction Under Statute*

In addition to the specific reference in the Constitution, the writ has also been granted by statute. The federal courts have had the power to grant writs of habeas corpus since enactment of the Judiciary Act of 1789. Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 82 (the "1789 Act"). In 1867, Congress expanded the Supreme Court's statutory appellate jurisdiction while also expanding the power of the federal courts to issue writs of habeas corpus, permitting the issuance of such writs "in all cases where any person may be restrained of his or her liberty in violation of the Constitution, or any treaty or law of the United States." *Yesil v. Reno,* 958 F.Supp.

828, 1997 WL 86391 (S.D.N.Y. Feb. 27, 1997) (citing Act of Feb. 5, 1867, ch. 28, 14 Stat. 385 (the "1867 Act.")) The current version of the Habeas Act is found in 28 U.S.C.A. §§ 2241–2255.

■ Section 2241 of Title 28 of the United States Code establishes federal courts' power to grant the writ of habeas corpus. It provides, in part, that:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdictions

. . . .

(c) The Writ of habeas corpus shall not extend to a prisoner unless—

(1) He is in custody under the color or by color of the authority of the United States or

. . . .

(3) He is in custody in violation of the Constitution or laws or treaties of the United States

. . . .

28 U.S.C. § 2241(a), (c)(1), (c)(3). Section 2241 is the direct descendant of Section 14 of the Judiciary Act of 1789 and the 1867 Act, which expanded the scope of the writ. See Act of Sept. 24, 1789, ch. 20, § 14, 1 Stat. 82; Act of Feb. 5, 1867, ch. 28, 14 Stat. 385. Under Section 2241 habeas corpus will lie to protect the fundamental liberties guaranteed under the Constitution. *Benziane v. U.S.,* 960 F.Supp. 238 (D.Colo.1997).

The petitioner argues that his access to this judicial review should not be restricted because there is not sufficient "clear and convincing evidence" that the IIRIRA repeals the district court's habeas corpus review under 28 U.S.C. § 2241. His argument is based on the principle espoused by the Supreme Court in *Abbott Labs. v. Gardner,* 387 U.S. 136, 140–41, 87 S.Ct. 1507, 1510–11, 18 L.Ed.2d 681 (1967). In *Abbott Labs,* the Supreme Court adopted a presumption of reviewability which it derived from the structure of the Administrative Procedure Act: "[T]he Administrative Procedure Act ... embodies the basic presumption of judicial re-

view.... [O]nly upon a showing of 'clear and convincing evidence' of a contrary legislative intent should courts restrict access to judicial review."

Almost one-hundred thirty years ago, and again last year, the Supreme Court explicitly admonished that Congressional intent to repeal habeas jurisdiction must be express and that "[r]epeals by implication are not favored." *Felker v. Turpin,* 518 U.S. 651, ——, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996); *see also Ex Parte Yerger,* 75 U.S.(8 Wall.) 85, 105, 19 L.Ed. 332 (1868). In both *Felker* and *Yerger* the Court refused to read jurisdiction modifying statutes enacted by Congress as repealing other avenues of habeas jurisdiction that had not been specifically abrogated, much less mentioned, by those jurisdiction modifying statutes. "Only upon a clear statement can a court conclude that Congress meant to repeal an independent avenue of habeas jurisdiction." *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997). Such a clear statement is absent from the governing statute in the present case.

The Government points to the phrase "notwithstanding any other provision of law, no court shall have jurisdiction..." In § 242(g) of the INA, as amended by IIRIRA, as evidence that Congress intended to eliminate the district courts' recognized jurisdiction under 28 U.S.C. § 2241. They assert that this is "clear and convincing evidence" that Congress repealed the district courts' power to hear habeas corpus claims of any person in custody, including deportable aliens.

On this point the Court finds helpful the reasoning of the District Court for the District of Columbia in *Ozoanya v. Reno,* 968 F.Supp. 1 (D.D.C.1997), a case addressing the issue of whether 28 U.S.C. § 2241 remains a viable basis for habeas jurisdiction after the enactment of the IIRIRA. In *Ozoanya,* the United States District Court for the District of Columbia held that, the district courts jurisdiction to hear claims brought by deportable aliens under 28 U.S.C. § 2241 survives the 1996 amendments to the INA. In so holding the court stated:

> It follows from *Felker* that if Congress had intended to eliminate the district courts'

jurisdiction under 28 U.S.C. § 2241 to consider habeas corpus petitions filed by a certain class of persons in custody, it would have had to do so affirmatively and clearly. There is nothing in the language of ... the IIRIRA to suggest that Congress expressly repealed Section 2241, limited its scope or eliminated the jurisdiction of the district courts under that statute to consider petitions for writs of habeas corpus....

> The language of ... the IIRIRA is "at best ambiguous" it "[does] not state that they repeal or amend section 2241; indeed they do not mention section 2241 at all." *Yesil v. Reno,* 958 F.Supp. 828, 838 (S.D.N.Y.1997).

*Ozoanya,* 968 F.Supp. At 6–7.

In *Mojica v. Reno,* supra, the United States District Court for the Eastern District of New York also found that the general habeas statute at 28 U.S.C. § 2241 continues to provide a jurisdictional basis for relief from deportation orders. *Mojica,* 970 F.Supp. 130 (E.D.N.Y.1997). In an opinion that supplements *Ozoanya,* the *Mojica* court stated:

> Congress is expert in the process of lawmaking. Had it desired to repeal section 2241, or render it inapplicable to challenges to deportation orders, it would have taken the necessary steps to do so. It must be presumed that Congress was mindful of the necessity for a clear statement to that effect. Congress is presumed to know the law. As the *Felker* Court acknowledged, Congress knows how to repeal habeas jurisdiction. Where it intended to do so, it states that intention expressly. *See, Felker v. Turpin,* 518 U.S. 651, ——, 116 S.Ct. 2333, 2338, 135 L.Ed.2d 827 (1996).

*Mojica,* 970 F.Supp. at 160 (citations omitted).

The *Mojica* court also referred to findings relating to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (1996), the statutory predecessor to the IIRIRA. The AEDPA, like IIRIRA, also contained a section which attempted to withdraw habeas corpus

jurisdiction by all courts. Like the IIRIRA, the AEDPA did not expressly purport to modify section 2241. *Yesil,* 958 F.Supp. 828 (S.D.N.Y.). The *Mojica* Court, to provide further support for their holding, pointed out that district courts addressing the AEDPA's effect on § 2241 "have been almost unanimous in their agreement that § 2241 is available and has not been repealed." *Mojica,* 970 F.Supp. At 161, [citing *Yesil,* 958 F.Supp. 828 (S.D.N.Y.1997); *Eltayeb v. Ingham,* 950 F.Supp. 95 (S.D.N.Y.1997); *Duldulao v. Reno,* 958 F.Supp. 476 (D.Haw.1997); *Dunkley v. Perryman,* 1996 WL 464191 (N.D.Ill. 1996); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996)]. Essentially, all these courts found that § 2241 was still available despite the enactment of the AEDPA, because the latter did not expressly repeal § 2241. Because the AEDPA and the IIRIRA basically contained the same jurisdictional withdrawal provision, the Court in *Mojica* utilized this logic in analyzing the effect of IIRIRA on § 2241 jurisdiction. By doing so it came to the conclusion stated earlier that, in the wake of the IIRIRA, section 2241 remains a viable basis for habeas jurisdiction. *Mojica,* 970 F.Supp. At 159–163.

■ This Court agrees with the reasoning of both the *Ozoanya* and *Mojica* courts. Because the IIRIRA does not amend, or even mention, section 2241 of Title 28, the Court cannot conclude that Congress repealed § 2241 by implication. In order to have effectively repealed this statute Congress would have had to say so explicitly. It must be remembered that "[c]ourts do not have to resort to divining phantom or unarticulated Congressional intentions to repeal habeas jurisdiction from the void of statutory silence." *Mojica,* 970 F.Supp. at 160. Furthermore, if the Court were to find that the statute was repealed, the Court arguably would be violating the Suspension Clause of the Constitution. *See* Art. I, § 9, cl. 2; *Mbiya,* 930 F.Supp. at 612 ("Any attempt by Congress to restrict this sphere of authority necessarily would create constitutional difficulties not only with respect to the Suspension Clause, but also with respect to the Constitution's delineation of authority between the branches of the government").

### D. *Continued Viability of Habeas Corpus*

In summary, from a historical and jurisprudential perspective, it is clear that the great writ still has vitality and that this court has jurisdiction. The suggestion that the IIRIRA bars all habeas corpus review must be rejected. *See Yang v. INS,* 109 F.3d 1185, 1194–97 (7th Cir.1997); *Boston–Bollers v. INS,* 106 F.3d 352, 355 (11th Cir.1997); *Williams v. Immigration & Naturalization Service,* 114 F.3d 82, 84 (5th Cir.1997). In the present case, however, it is necessary to explore whether this petitioner, a non citizen legal alien, fits within the scope of this concept.

### III.

### *Scope of Habeas Review*

■ "Habeas Corpus review under § 2241 [or as contemplated by art. 1, section 9 of the Constitution] is justified if an alien subject to an order of deportation based on violation of crimes enumerated by Congress demonstrates some grave constitutional error or a fundamental miscarriage of justice." *Mbiya,* 930 F.Supp. 609, 612 (N.D.Ga.1996); *See also, Yesil,* 958 F.Supp. 828 (S.D.N.Y.1997); *Eltayeb,* 950 F.Supp. 95 (S.D.N.Y.1997). With the enactment of the IIRIRA, Congress evidenced its desire to expedite the deportation of criminal aliens and to restrict all judicial review of final orders of deportation to the greatest extent possible. Thus, in determining the scope of habeas review, courts have concluded that review should be limited to those situations in which deportation would result in a fundamental miscarriage of justice. *Id.* The rationale for this narrow scope of review is that it "is necessary to accommodate the balance between an alien's constitutional right to habeas review and Congress' power over matters of immigration." *Eltayeb,* 950 F.Supp. at 99. Hence a court should grant relief to the petitioner only if he demonstrates some grave constitutional error or a fundamental miscarriage of justice. Accordingly, the Court will analyze the petitioner's claims under this narrow standard of review.

## A. *Procedural Due Process Claims—Deportation Hearing*

The Court will first address the petitioner's claim that his deportation hearing was in violation of his right to due process. Specifically, the petitioner claims that the deportation hearing violated procedural due process and fundamental fairness because the petitioner never made a knowing waiver of his constitutional rights. The petitioner contends that because he was never told by the Immigration Judge that he could be detained for an indefinite period of time as a result of the deportation hearing, he waived several important rights and made a number of significant admissions, such as electing not to obtain an attorney and admitting he was a German citizen. He also contends that he was never told by the Immigration Judge that his relatives' interest would be one of the principal determining factors in the outcome of the case. Furthermore, he was never asked by the Immigration Judge if he could obtain affidavits from his relatives expressing their interest. Accordingly, the petitioner contends that his right to call such witnesses and produce affidavits was waived unknowingly.

Aliens within this country who face expulsion are entitled to the procedural safeguards of due process. As the Supreme Court has held, "once an alien gains admission to a country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Landon v. Plasencia,* 459 U.S. 21, 32–33, 103 S.Ct. 321, 329, 74 L.Ed.2d 21 (1982). "The Supreme Court has frequently suggested that a continuously present alien is entitled to a fair hearing when threatened with deportation, and, has developed the rule that a continuously present permanent resident alien has a right to due process in such a situation." *Id.*

The Due Process Clause of the Fifth Amendment provides that "[n]o person ... shall be deprived of life, liberty, or property without due process of law...." It protects individuals against two types of government action. "Substantive Due Process" prevents the government from engaging in

conduct that "shocks the conscience,"[3] or interferes with rights "Implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). "Procedural Due Process" ensures that government action depriving a person of life, liberty, or property is implemented in a fair manner. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

As stated above, "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993). Accordingly, the Immigration Judge must conduct deportation hearings in accord with the standards of due process. *Olabanji v. I.N.S.,* 973 F.2d 1232, 1234 (5th Cir.1992). If the deportation hearings are not conducted properly, a due process violation exists when the defect impinges "upon the fundamental fairness of the hearing in violation of the Fifth Amendment, and there existed substantial prejudice." *Ogbemudia v. I.N.S.,* 988 F.2d 595, 598 (5th Cir.1993).

### 1. *Petitioner's waiver of right to counsel*

Although Congress has provided by statute that an alien has a right to obtain counsel at his own expense, an alien does not have a Sixth Amendment right to counsel in an immigration proceeding. Thus, "any right an alien may have in this regard is grounded in the fifth amendment guarantee of due process rather than the sixth amendment right to counsel." *Barthold v. U.S. Immigration and Naturalization Service,* 517 F.2d 689 (5th Cir.1975).

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established the "totality of circumstances approach" for reviewing waiver of Fifth Amendment rights. In order for a waiver of right to counsel to be valid it must be made knowingly and intelligently. *Molignaro v. Smith,* 408 F.2d 795 (5th Cir.1969). Thus if petitioner's waiver of counsel was not made knowingly or intelligently, then the Immigration Judge's acceptance of it could constitute

---

**3.** *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

a due process violation if it impinged "upon the fundamental fairness of the hearing in violation of the Fifth Amendment" and resulted in substantial prejudice. *Ogbemudia,* 988 F.2d at 599. The determination of whether a waiver of the right to counsel has been made knowingly and intelligently depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

The petitioner likens his waiver of rights in the administrative hearing to those waived by a criminal defendant in a guilty plea. The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). The petitioner contends that he did not knowingly waive his right to counsel at the deportation hearing because the Immigration Judge did not inform him that a result of the hearing could be prolonged detention. After review and study of the administrative record, the United States Magistrate Judge found that the petitioner, despite the claimed defect, knowingly and intelligently waived his right to counsel. This Court agrees.

Having reviewed the record in light of the "totality of the circumstances," the Court is convinced that the petitioner's waiver of counsel during the deportation hearing was constitutionally valid and that there was no fundamental unfairness in the Immigration Judge's acceptance of this waiver. Therefore, the petitioner was not deprived of due process. First, the petitioner should have known about the value of counsel in legal proceedings due to his extensive first hand knowledge of the criminal justice system. Secondly, he was specifically told that he had a right to counsel and was advised about the ramifications and possible consequences of his admissions. This factor alone is sufficient to support a finding that there was not a denial of due process. *Barthold,* 517 F.2d 689 (5th Cir.1975).

The Court does not agree with the petitioner that the Immigration Judge had a duty to inform him, that if found deportable he could be detained while awaiting deportation. The nature of a deportation hearing is civil in nature. *Ramirez–Osorio v. I.N.S.,* 745 F.2d 937 (5th Cir.1984). "Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Thus, a waiver of counsel in a deportation hearing need not be "made with an apprehension of ... the range of allowable punishments thereunder, ... and all other facts essential to a broad understanding of the matter." *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). In short, the petitioner has failed to present any authority for his argument that an Immigration Judge in a deportation proceeding must inform the alien of all the possible consequences that might result from a finding of deportability. Accordingly, the Court finds the fact the Immigration Judge failed to inform the petitioner of the possibility of prolonged detention did not alter the fact that the waiver of counsel was made knowingly. Hence, the deportation hearing was conducted in accordance with the requirements of due process and fundamental fairness.

2. *Petitioner's lack of affidavits and admissions that he was a Citizen of Germany*

The second prong of the petitioner's due process claim, is that his lack of attorney prejudiced him at the deportation hearing. As such the petitioner believes that the deportation hearing was unfair and did not comport with the requisites of procedural due process. Specifically, the petitioner contends that the lack of affidavits from his relatives and his conclusion that he was a German citizen interfered with his chance to obtain Section 212(c) relief of the Immigration Act. Accordingly, the petitioner contends that his right to due process of the law was violated.

Under Section 212(c) of the Immigration and Nationality Act, aliens admit-

ted for permanent residence who have maintained a lawful unrelinquished domicile in the United States for seven consecutive years, may in the Attorney General's discretion, be permitted to continue residing in the United States notwithstanding their deportability under other sections of the Act. *Ashby v. I.N.S.*, 961 F.2d 555 (5th Cir.1992). Section 212(c) does not provide an indiscriminate waiver for all who demonstrate statutory eligibility for such relief. *Id.* Rather, the petitioner bears the burden of demonstrating that his request for a waiver warranted favorable consideration. Further, "because section 212(c) does not provide standards governing how the Board's discretion should be exercised, the Attorney General has unusually broad discretion in granting and denying waivers." *Id.*

■■■ ■In order to provide the framework for an equitable application of discretionary relief, the Board has enunciated factors relevant to the issue of whether § 212(c) relief should be granted as a matter of discretion:

> Among the factors deemed adverse to a respondent's application have been the nature and underlying circumstances of the exclusion ground at issue, the presence of additional significant violations of this country's laws, the existence of a criminal record and, if so, its nature, recency, and seriousness, and the presence of other evidence indicative of a respondent's bad character or undesirability as permanent resident of this country.

*Matter of Marin*, 16 I & N Dec. 581, 584–85 (BIA 1978). The decision to grant § 212(c) relief is within the sole discretion of the Immigration Judge.

The AEDPA and the IIRIRA both evidence Congress' intent to preclude from review those matters particular to the agency's discretion and expertise—i.e., matters involved in determinations of deportability. *Anwar v. I.N.S.*, 107 F.3d 339, 342 (5th Cir. 1997). The petitioner, however, does not ask this Court to review the decision of the Immigration Judge to deny discretionary relief. Rather, the petitioner is seeking review of certain procedural aspects of the hearing at which the Immigration Judge decided not to grant discretionary relief under § 212(c).

Accordingly, the petitioner's challenges are reviewable by this Court for the purpose of determining whether the hearing was conducted in accordance with due process.

### a. *Lack of Affidavits*

The petitioner's alleged due process violation is that he was never told that he, pursuant to § 212(c), could provide affidavits at the hearing in support of his application for § 212(c) relief. Accordingly, the petitioner contends that this defect rendered the hearing unfair and that he was substantially prejudiced thereby. The Board of Immigration Appeals has set forth several "favorable considerations" on which the alien may "present[ ] evidence in support of a favorable exercise of discretion" under § 212(c):

> Favorable considerations have been found to include such factors as family ties within the United States, residence of long duration in this country ..., evidence of hardship to the respondent and family if deportation occurs, ..., a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g., affidavits from family, friends, and responsible community representatives).

*Matter of Marin*, 16 I & N Dec. at 584–85 (citation omitted). The petitioner argues that his right to due process of the law was violated by the Immigration Judge failing to inform him that he could provide affidavits and then basing the decision to deny § 212(c) relief on a lack of such affidavits.

■■■ The Court finds that the petitioner's lack of affidavits did not "impinge upon the fundamental fairness of the hearing in violation of the Fifth Amendment," or substantially prejudice the petitioner. *Ogbemudia*, 988 F.2d at 595 (5th Cir.1993). First, a due process challenge requires a showing of substantial prejudice to the petitioning alien. *Hernandez–Garza v. INS*, 882 F.2d 945 (5th Cir.1989). Also, "to render a hearing unfair, the defect or practice complained of must have been such as might have led to a denial

of justice, or there must have been absent an element deemed essential to due process." *Animashaun v. Immigration and Naturalization Service*, 990 F.2d 234, 238 (5th Cir. 1993).

The petitioner, however, contends that his due process rights were violated because the Immigration Judge made the lack of affidavits a key factor in deciding whether to grant § 212(c) relief. Essentially the petitioner contends that had he been informed of his right to provide affidavits from his relatives indicating they would suffer emotional hardship if he were deported, he would have done so. According to the petitioner, these affidavits would have persuaded the Immigration Judge to grant relief under § 212(c). Thus, the petitioner contends that he was substantially prejudiced by his lack of affidavits. The Court disagrees.

The Immigration Judge, despite the lack of affidavits outlining hardship, assumed that deportation would adversely effect the petitioner and his relatives. He then "balance[d] the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether granting section 212(c) relief appear[ed] in the best interests of this country." *Matter of Marin*, 16 I & N Dec. at 584–85. Balancing these factors, the Immigration Judge found that the extreme hardship the petitioner and his family would suffer if he was deported was one of the most positive equities weighing in his favor. The effect that the petitioner alleges the affidavits would have had on the deportation hearing was achieved when the Immigration Judge assumed that the deportation would cause extreme hardship. Thus, the lack of affidavits did not prejudice the petitioner.

■ Moreover, the court finds no fundamental unfairness in the deportation hearing because the petitioner cannot point to anything in § 212(c) that required the Immigration Judge to inform him of his right to submit affidavits from relatives. Had the petitioner retained counsel, it would have been the obligation of the attorney to inform him of this right. However, the Immigration Judge was not the petitioner's counsel.

Thus, the Immigration Judge's failure to inform the petitioner of his right to submit affidavits from relatives did not lead to a denial of justice. Hence, the petitioner's original deportation hearing was fair and comported with the requisites of due process.

### b. Petitioner's Admission that he was a German Citizen

The petitioner also contends that the immigration judge mistakenly believed he was a German citizen. According to petitioner, had the Immigration Judge realized he had no country that would claim him as a citizen, the Immigration Judge would have granted him relief under § 212(c). Thus, he contends that the deportation hearing was constitutionally flawed. The Court disagrees.

The Immigration Judge did not deny § 212(c) relief simply because he believed that the petitioner was a German citizen. Section 212(c) relief was denied because of the petitioner's past criminal history and his prior episode of "bond jumping." The fact that the petitioner claimed he was a German citizen played only an insignificant part, if any, in the Immigration Judge's decision to deny § 212(c) relief. On page 14 of his Motion and Incorporated Memorandum to Review the Magistrate's Report and Recommendation, the petitioner even admits that the conclusion was innocuous. Accordingly, this Court finds that the Immigration Judge's finding as to the petitioner's citizenship did not substantially prejudice the petitioner, or render his hearing fundamentally unfair.

### B. Substantive Due Process Claim—Detention pending Deportation

The petitioner claims that his continued detention pending deportation violates his Fifth Amendment right to substantive due process. In arguing that the length of his detention (a denial of petitioner's asserted liberty interest) "shocks the conscience," the petitioner focuses on the substantive nature of the alleged constitutional violation.

Narrowly framed, the issue before this Court is whether a legal alien who is under a final order of deportation may be permanent-

ly incarcerated because the INS cannot find a country to take him. The Court must determine whether such detention is beyond permissible constitutional limitations. *Tran v. Caplinger*, 847 F.Supp. 469 (W.D.La.1993).

### 1. *Statutory Authority*

 It is necessary to note that control over matters of immigration and naturalization is the "inherent and inalienable right of every sovereign and independent nation." *Fong Yue Ting v. U.S.*, 149 U.S. 698, 711, 13 S.Ct. 1016, 1021, 37 L.Ed. 905 (1893). Under the United States Constitution, such control is vested in the political branches of government. See U.S. Const., art. 1, § 8, cl.4. Congressional power in their area is plenary, subject to only limited judicial review. See *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). In exercising its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews*, 426 U.S. at 80, 96 S.Ct. at 1891. Nonetheless, aliens both legal and illegal, are entitled to the constitutional protection of due process, equal protection and reasonable bail. *Id.* Also, legal aliens subject to deportation—the category in which petitioner falls—generally are granted greater substantive rights than are excludable aliens. *Landon*, 459 U.S. at 26–27, 103 S.Ct. at 325–26. With this in mind, the Court will review the petitioner's detention to determine whether it is violative of his substantive due process rights.

At the outset, the Court notes that petitioner is properly classified as a convicted aggravated felon because of his controlled substance violation. True, the petitioner has served his sentence and hence paid his debt to society, but that fact does not alter this status. See, 8 U.S.C. § 1101(a)(43). Petitioner does not challenge this finding.

The INA authorizes the Attorney General on behalf of the INS to take an alien into custody pending deportation. See generally, 8 U.S.C. § 1252. Section 1252(a)(2)(A) of the Act specifically provides for the detention of aggravated convicted felons, as follows:

The Attorney General shall take into custody any alien convicted of an aggravated felony upon release of the alien (regardless of whether or not such release is on parole, supervised release, or probation, and regardless of the possibility of rearrest or further confinement in respect of the same offense). Notwithstanding paragraph (1) or subsections (c) and (d) but subject to subparagraph (B), the Attorney General shall not release such felon from custody.

Paragraph (B) then provides:

The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

Section 1252(a)(2) creates a rebuttable presumption against the release of any alien who is convicted of an aggravated felony. See *Matter of Ellis*, 1993 WL 65657 (BIA 1993). Detention is required by 8 U.S.C. § 1252(a)(2)(A) unless the alien can rebut the presumption by successfully meeting the burden of proof set forth in 8 U.S.C. § 1252(a)(2)(B). Deportable aliens, convicted of aggravated felonies, who are lawfully admitted have an opportunity to overcome the presumption against their release by presenting favorable evidence to an Immigration Judge in an individual bond hearing. In order to be eligible for release, an alien convicted of an aggravated felony must show that he is lawfully admitted, that he is not a threat to the community, and that he is likely to appear at any scheduled hearings. 8 U.S.C. § 1252(a)(2)(B).

In this case, petitioner has established that he was lawfully admitted to this country; as to the other two requirements, however, petitioner has not met his burden of proof. Considering petitioner's recidivist history and his prior episode of "bond jumping," petitioner has not met his burden of proving that he is not a threat to the community and that he is likely to appear for scheduled hearings.[4]

---

**4.** The petitioner has received a discretionary

bond redetermination based entirely on the re-

According to the language of 8 U.S.C. § 1252(a)(2)(A) detention is clearly mandated for aggravated felons who have not overcome the presumption against their release. See 8 U.S.C. § 1252. The language of 8 U.S.C. § 1252(a)(2)(B) and the Transitional Custody rules of the IIRIRA also contain language which supports mandatory detention. Additionally, nowhere in the relevant statute does Congress place a time limit on the detention. In *Tran v. Caplinger*, 847 F.Supp. 469 (W.D.La.1993), the District Court for the Western District of Louisiana stated:

> Congress has made provisions for expediting deportation proceedings of aliens who are convicted of committing aggravated felonies. *See* 8 U.S.C. § 1252(a). However despite efforts to expeditiously deport aggravated felons, there are times when circumstances beyond the control of the Attorney General and her agents make immediate deportation impracticable, unadvisable, or impossible. When such delays occur, Congress has not expressly limited the power of the Attorney General to detain such aliens. Neither section 1252(a)(2) nor section 1252(a) places a time limit upon the period of detention. Clearly, Congress knows how to place time limits upon the period of detention if they had chosen to do so. *See* 8 U.S.C. § 1252(c).

■ Consequently, the mandatory language and the absence of a time limit on detention leads this Court to conclude that "indefinite detention of deportable aliens who are aggravated felons is statutorily authorized when immediate deportation is not possible and the alien has not overcome the presumption against his release." *Tran*, 847 F.Supp. at 474. *See, also, Palma v. Verdeyen*, 676 F.2d 100 (4th Cir.1982); *Gisbert v. U.S. Atty. Gen.*, 988 F.2d 1437 (5th Cir.1993).

### 2. Constitutional Challenge

This Court agrees with the Court in *Tran*, that "[w]hile there is statutory authority allowing indefinite detention of an alien who is classified as an aggravated felon under immigration law where the alien is unable to overcome the presumption which is established by 8 U.S.C. § 1252(a)(2), it is unclear how long this detention can continue without becoming violative of an alien's constitutional rights." Thus, "it is necessary for this Court to analyze the Petitioner's detention in light of his constitutional challenge to determine whether Petitioner's detention has continued beyond permissible constitutional limitations." *Id.*

■ At the outset this Court again notes that the Fifth Amendment's mandate that "no person shall ... be deprived of life, liberty, or property, without due process of law" extends due process protection to persons within the territorial United States and not just to U.S. citizens. *See Plyler v. Doe*, 457 U.S. 202, 210–12, 102 S.Ct. 2382, 2391–92, 72 L.Ed.2d 786 (1982); *Wong Wing v. United States*, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896). Thus, the petitioner is entitled to have his detention reviewed by this Court to make sure it comports with the notions of due process.

The constitutionality of the detention must be considered in light of its purpose. The Fifth Circuit has indicated that the focus must be on "whether the detention is imposed for the purpose of punishment or whether it is merely incidental to another legitimate governmental purpose." *Gisbert v. United States Attorney General*, 988 F.2d 1437, 1441 (5th Cir.1993), citing *Schall v. Martin*, 467 U.S. 253, 268–69, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984). Absent "any expression of intent to punish on the part of

---

cent enactment and invocation of the superseding Transitional Custody Rules of the IIRIRA. The Transition Period Custody Rules replaced the amendments made by section 440(c) of the AEDPA. Aliens who, like the petitioner, are deportable for having been convicted of an aggravated felony or a controlled substance violation may be released if:

"(I) the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety

of other persons or of property and is likely to appear for any scheduled proceeding."
See Section 303(b)(3)(B) of the IIRIRA. Consequently, in compliance with the Transitional Custody Rules, INS has interviewed the petitioner and has reviewed his file. Again, the INS has decided not to release the petitioner because he has not met his burden of proving that he is not a threat to the community and that he is likely to appear for scheduled hearings.

the government, that determination will generally turn on 'whether an alternative purpose to which [the detention] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 1441–42, citing *Schall,* 467 U.S. at 268–69, 104 S.Ct. at 2411–12.

The legislative history and text of Section 1252 clearly shows that Congress did not contemplate permanent detention as a means of punishment for aliens convicted of aggravated felonies who have already served their sentence. *Tran,* 847 F.Supp. at 474. Section 1252(a)(2)(B) of the INA and § 303(b)(3)(B) of the IIRIRA provides for the release of a lawfully admitted alien who has been convicted of an aggravated felony where the alien has demonstrated that he is neither a threat to others nor a flight risk. Thus, the purpose behind detention of these aliens is to protect the community from aggravated felons and to prevent aliens from absconding before deportation can be accomplished. *Id., Caballero v. Caplinger,* 914 F.Supp. 1374 (E.D.La.1996). Accordingly, the question of whether petitioner's detention complies with substantive due process ultimately turns on whether the detention in petitioner's case is excessive in relation to these goals.

The court in *Tran* determined that continued detention of a non-excludable alien under § 1252 pending deportation is not an excessive means of accomplishing the government's purpose. *Tran,* 847 F.Supp. 469. The *Tran* court recognized the heightened interest of Congress in immigration matters and noted that the INS had limited application of § 1252(a)(2) detention to those aliens who have already been judicially determined to have committed a felony. *Id.* at 475. The Court also notes that in *Gisbert* the Fifth Circuit using essentially the same rationale as the court in *Tran* found that the continued detention of an excludable alien pending deportation was not an excessive means of accomplishing the purposes sought to be served by § 1252(a). *See also Caballero,* 914 F.Supp. at 1374.

It is clear that protecting the community from aggravated felons and preventing aliens

from absconding before deportation are legitimate governmental policy goals that, "can warrant a · deprivation of liberty under the proper circumstances." *U.S. v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

■■■ The particularly troublesome aspect of the petitioner's detention is its duration to date and its potential, if not certainty, for indefinite duration in the future. Detention is intended for the sole purpose of effecting deportation, and once it becomes evident that deportation is not realizable in the future, the continued detention of the alien loses its *raison d'etre.* If there is nowhere to send the alien, then indefinite detention is no longer a temporary measure in the process of deportation; it is permanent confinement. "Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus justifiable only as a temporary measure." *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir.1981).

Federal circuit and district courts have long held that deportable aliens in custody for more than a few months must be released because such detention becomes imprisonment. For example, in *Petition of Brooks,* 5 F.2d 238, 239 (D.Mass.1925) the court declared:

> "The right to arrest and to hold or imprison an alien is nothing but a necessary incident of the right to exclude or deport. There is no power in this court or in any other tribunal in this country to hold indefinitely any sane citizen or alien in imprisonment, except as punishment for a crime. Slavery was abolished by the Thirteenth Amendment. It is elementary that deportation or exclusion proceedings are not punishment for a crime. . . . He is entitled to be deported or to have his freedom."

and, in *United States ex rel. Ross v. Wallis,* 279 F. 401, 403–04 (2d Cir.1922), the court stated:

> " . . . we therefore express an opinion that unless this relator, or any other person similarly situated, be actually deported within four months after such alien has exhausted his legal remedies, any further

or other detention under pretense of awaiting opportunity would amount, and will amount, to an unlawful imprisonment, from which relief may be affected by a new habeas corpus."

Thus, courts have not hesitated to condemn the detention of an alien whenever it has appeared, following the lapse of a reasonable time, that his deportation was impossible or could not be effected in the foreseeable future. *See U.S. ex rel. Kusman v. District Director of Immigration and Naturalization at Port of New York,* 117 F.Supp. 541 (S.D.N.Y.1953); *U.S. ex rel. Ross v. Wallis,* 279 F. 401 (2d Cir.1922); *Caranica v. Nagle,* 28 F.2d 955 (9th Cir.1928); *Wolck v. Weedin,* 58 F.2d 928 (9th Cir.1932); *In re Hanoff,* 39 F.Supp. 169 (D.Cal.1941); *U.S. ex rel. Janavaris v. Nicolls,* 47 F.Supp. 201 (D.Mass. 1942). The United States District Court for the District of Kansas stated that:

> "The rationale underlying these decisions was that detention was intended for the sole purpose of effecting deportation. Once it has become evident that deportation was not realizable in the foreseeable future, the continued detention was found to be without cause."

*Fernandez v. Wilkinson,* 505 F.Supp. 787, 792 (D.Kan.1980). Courts have held that approximately two to four months was a reasonable period to detain an alien pending deportation efforts. *Id.* In the wake of these holdings, Congress enacted 8 U.S.C. § 1252(c), which gave the Attorney General six months in which to accomplish the aliens departure.[5] Although, the section has been repealed it does exhibit that at one point in time Congress disapproved of detention beyond the reasonable time necessary to execute a final order of deportation.

■■■ Based upon the rationale above, this Court finds that the petitioner's detention of nearly four years with no end in sight, and the probability of permanent confinement, is an excessive means of accomplishing the purposes sought to be served by 8 U.S.C. § 1252(a). The inability of the INS to obtain travel documents for the petitioner within nearly four years troubles this Court. The United States has amicable relationships with Germany and Lithuania. Thus the INS cannot claim that uncertain status between the United States and any one of these countries is the reason for the inability to deport and imply that in due time the situation will or may change. The fact of the matter is that the petitioner is not now nor has he ever been a citizen of any country. To say that he is temporarily detained pending deportation is not accurate. The petitioner, a legal alien, will never be deported because there is no place to send him. This fact distinguishes this case from the other cases cited elsewhere in this opinion dealing with aliens awaiting deportation. The petitioner is reminiscent of E.E. Hale's novel, *"Man Without A Country,"* except that his perpetual confinement is in a prison rather than on a ship. This result "shocks the conscience" of the Court. Accordingly, the Court finds that the petitioner's detention is violative of his constitutional rights to substantive due process.[6]

## IV.

### CONCLUSION

For the foregoing reasons, IT IS ORDERED that the petitioner's application for

---

**5.** 8 U.S.C. § 1252(c) stated in pertinent part as follows:

Final Order of Deportation; place of detention. When a final order of deportation under administrative processes is made against any alien, the Attorney General shall have a period of six months from the date of such order, or is judicial review is had, then from the date of the final order of the court within which to effect the alien's departure from the United States, during which period at the Attorney General's discretion, the alien may be detained, released on bond in an amount and containing such conditions as the Attorney General may prescribe, or released

on such other conditions as the Attorney General may prescribe.

**6.** The petitioner makes two other arguments relating to his continued confinement pending deportation. The first of these contentions is that the petitioner's right to procedural due process was violated as to his continued confinement. The second contention is that the petitioner's incarceration violates the Eighth Amendment's prohibition against cruel and unusual punishment. However, because of this Court's ruling on substantive due process this Court need not address these claims.

writ of habeas corpus is HEREBY GRANT-ED.

IT IS FURTHER ORDERED that the petitioner, Kestutis Zadvydas, SHALL BE RELEASED from the custody of the INS upon conditions to be set by the Court at a hearing, which shall be held on Wednesday, November 12, 1997 at 9:00 a.m. in Room C–468.

IT IS FURTHER ORDERED that petitioner shall be released within 35 days from the date of such hearing.