Francisco **RODRIGUEZ**, Petitioner,

v.

Edward J. **McELROY**, District Director, Ins, Janet Reno, Attorney General, Ins, and any other persons having the Petitioner in custody, Respondents.

No. 98 CIV. 7556(RPP).

United States District Court, S.D. New York.

Feb. 24, 1999.

Francisco Rodriguez, York, PA, pro se.

Mary Jo White, United States Attorney for the Southern District of New York, New York, By F. James Loprest, Jr., for Respondent.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Petitioner Francisco Rodriguez ("petitioner" or "Rodriguez") has filed a petition for a writ of habeas corpus seeking his release from the custody of the Immigration and Naturalization Service ("I.N.S."). The Government opposes the petition and requests that it be denied on its merits. In the alternative, the Government argues that the petition should be dismissed be-

cause of petitioner's failure to exhaust his administrative remedies, and the petition is dismissed for that reason.

Rodriguez was born in Cuba on August 16, 1965 and came to the United States at a young age. According to his petition, Rodriguez was granted humanitarian parole into the U.S. on December 7, 1967; according to an affidavit he executed on April 18, 1990, he entered the country illegally when he was three or four years old. (Loprest Decl. Ex. A at 66.)[1] In his petition Rodriguez states that at age five he was taken from his mother and placed in a home for boys and then a foster home; that he has had jobs and paid taxes; that his sisters and grandmother are U.S. citizens; and that he has never left the U.S. since his initial arrival.

Rodriguez has a criminal record. In 1984 he pleaded guilty to two charges of attempted burglary, and he was sentenced to six months' imprisonment and five years' probation on February 14, 1985. (*Id.* at 44, 57–58.) In 1989 he pleaded guilty to criminal sale of a controlled substance in the second degree, and he was sentenced as a predicate felon to seven and a half years' to life imprisonment on September 26, 1989. (*Id.* at 48, 51, 54.)

In April 1997, while Rodriguez was in New York state prison, the I.N.S. lodged a detainer with the New York Department of Corrections, issued a warrant for Rodriguez's arrest, and issued him a Notice to Appear in removal proceedings. The alleged bases for Rodriguez's removal were that he was an immigrant who lacked a valid visa, entry permit, or border-crossing card (8 U.S.C. § 1182(a)(7)(A)(i)); that he

1. In an undated letter to the Court received January 6, 1999, Rodriguez's wife, Dorothy Rodriguez, submitted documents purporting to be his proof of entry and documentation of his being granted humanitarian parole. His I–94 form appears to show that Mr. Rodriguez was granted indefinite parole on November 30, 1967. However, the I–94 also contains a notice which states, "Your parole into the United States does not constitute an admission under the terms of the Immigration

and Nationality Act. You must observe the conditions of the parole and failure to comply with any of those conditions may result in the revocation of your parole." Ms. Rodriguez goes on to state that her husband should have been granted citizenship long ago. However, there is no evidence in the record that Mr. Rodriguez ever applied for citizenship, and the Court has no authority to deem him a citizen on its own accord.

was an alien who had been convicted of two or more non-political offenses for which the aggregate sentences to confinement actually imposed were five years or more (8 U.S.C. § 1182(a)(2)(B)); and that he was an alien whom a consular or immigration official knew or had reason to know was or had been an illicit trafficker in controlled substances (8 U.S.C. § 1182(a)(2)(C)). (*Id.* at 32–33.) On August 8, 1997, an immigration judge ordered Rodriguez removed. (*Id.* at 23–27.) He was ordered removed to Cuba, as Rodriguez did not designate a country to which to be removed and as the I.N.S. selected Cuba. The Bureau of Immigration Appeals ("B.I.A.") dismissed Rodriguez's appeal on May 4, 1998. (*Id.* at 9.)

Meanwhile, on April 30, 1998, Rodriguez completed his New York State sentence, and he was taken into the custody of the I.N.S.'s New York District Director, in whose custody he has been ever since. On October 16, 1998, Rodriguez consented to appear without counsel at an interview to determine whether or not he should be released from I.N.S. custody. (*Id.* at 1.)[2] The interview took place on December 3, 1998, at Cambria County Prison, and both members of the interview panel were "unable to conclude that [Rodriguez], upon being released from INS custody, will not pose a threat to the community." (*Id.* at 7.)

Rodriguez claims that he is being incarcerated unlawfully because the I.N.S. has had him in its custody for over 90 days. Under 8 U.S.C. § 1231(a)(1), the Attorney General has 90 days to remove an alien who has been ordered removed. Rodriguez's removal order became final when his appeal was dismissed by the B.I.A. on May 4, 1998, and thus his 90 day removal period expired on August 2, 1998. 8 C.F.R. § 241.1(a). During the removal period, the Attorney General is to detain the alien. 8 U.S.C. § 1231(a)(2). However, contrary to Rodriguez's assertion, the Attorney General does have the authority to continue to detain a removable alien past the 90 day removal period: "An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) ] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period..." 8 U.S.C. § 1231(a)(6).

█ Rodriguez was taken into I.N.S. custody pursuant to a Warrant of Removal/Deportation dated May 7, 1998. (Loprest Decl. Ex. A at 8.) That warrant was based on the B.I.A.'s final order of removal dated May 4, 1998 (*id.* at 9), in which the B.I.A. affirmed the immigration judge's ruling that Rodriguez was inadmissible under § 1182.[3] Thus, because he is an "alien ordered removed who is inadmissible under [§ 1182]," the Attorney General may

---

**2.** The Government says that this interview was undertaken pursuant to the I.N.S.'s so-called Cuban Review Plan and cites 8 C.F.R. §§ 212.12–13 (1998). However, those regulations pertain to the "Mariel Cubans," individuals who last came to the U.S. between April 15, 1980, and October 20, 1980, and who are detained by I.N.S. Rodriguez is not a Mariel Cuban, having last arrived in the U.S. in the late 1960's. Moreover, there is nothing on the Notice of Interview (Loprest Decl. Ex. A at 1–2) or Criminal Alien Review Sheet (*Id.* at 3–7) forms to indicate that Rodriguez's interview was conducted pursuant to 8 C.F.R. §§ 212.12–13, though it is possible that it was done so even though Rodriguez is not a Mariel Cuban. It is possible that he was interviewed through the Criminal Alien Review

Panel program, which was apparently established in 1998 to review the cases of detained, removable aliens from other nations such as Afghanastan. *See* Juan Forero, *Caught Between Nations, Convicts Languish in Limbo,* The Star–Ledger, Nov. 24, 1998, at 1.

**3.** As noted above, *supra* at 2, the Notice to Appear in removal proceedings charged Rodriguez with being inadmissible under three sections of the Immigration and Naturalization Act: 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1182(a)(2)(B), and 1182(a)(2)(C). (Loprest Decl. Ex. A at 32–33.) The decision of the immigration judge appears to be based solely on § 1182(a)(7)(A)(I). (*Id.* at 24.)

lawfully detain Rodriguez beyond the 90 day removal period. 8 U.S.C. § 1231(a)(6).

■ Though his continued detention is not per se unlawful, it is also not mandatory. I.N.S. regulations provide Rodriguez an avenue for possible relief:

> The district director may continue in custody any alien inadmissible under [8 U.S.C. § 1182(a) ] or removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) ], or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the alien's appearance for removal.

8 C.F.R. § 241.4(a).[4] In reviewing the alien's case, the "district may consider, but is not limited to considering, the following factors: (1) The nature and seriousness of the alien's criminal convictions; (2) Other criminal history; (3) Sentence(s) imposed and time actually served; (4) History of failures to appear for court (defaults); (5) Probation history; (6) Disciplinary problems while incarcerated; (7) Evidence of rehabilitative effort or recidivism; (8) Equities in the United States; and (9) Prior immigration violations and history." *Id.*

■ Rodriguez has not provided evidence that he has already petitioned the New York district director to release him pending his removal pursuant to 8 C.F.R. § 241.4(a). Before bringing a petition for a writ of habeas corpus to the District Court, a petitioner must exhaust his or her administrative remedies. *Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979). In the case of a removable alien detained past the 90 day removal period, the petition must first be raised with the I.N.S. district director. 8 C.F.R. § 236.1(d)(1); *Aboulkhair v. INS,* No. 97 Civ. 1872, 1998 WL 2557, at 2–4 (S.D.N.Y. Jan. 5, 1998); *Lleo–Fernandez v. INS,* 989 F.Supp. 518, 519 (S.D.N.Y.1998).

It is possible that the Review Panel's determination (*supra,* note 2) constituted or was equivalent to a decision by the district director. If true, Rodriguez would still have to appeal the Review Panel's decision to the B.I.A. *Oliva v. INS,* No. 98 Civ. 6526, 1999 WL 61818 (S.D.N.Y. Feb. 10, 1999); *Abdul v. INS District Director,* No. 98 Civ. 2460, 1999 WL 58678 (S.D.N.Y. Feb. 4, 1999); 8 C.F.R. § 236.1(d)(3)(iii). An alien has 10 days to appeal the district director's decision to the B.I.A. 8 C.F.R. § 236.1(d)(3)(iii). Given that the Government here argues that Rodriguez has not yet petitioned the district director (Resp. Mem. at 10), the Court assumes that the Review Panel process is entirely separate from the alien's rights to request relief from the district director under 8 C.F.R. § 236.1(d)(3)(iii). In any event, once Rodriguez requests relief from the district director he must appeal any adverse decision by the district director within 10 days to the B.I.A. before filing a habeas petition in U.S. District Court.

> In these cases, the alien has already been found inadmissible under § 1182 or removable under § 1227 by an immigration judge, and the alien then has the burden of proving to the district director by clear and convincing evidence that he is not a danger or a flight risk. Aliens who fall under the second prong of 8 U.S.C. § 1231(a)(6)-those determined by the Attorney General to be a danger or a flight risk-may very well be in a situation in which the regulation is inconsistent with the statute, ·but that is not a concern in this case.

4. The statute, 8 U.S.C. § 1231(a)(6), and the regulation, 8 C.F.R. § 241.4(a), appear at first glance to be inconsistent, with the statute placing the burden on the Attorney General to determine that an alien under a removal order is a danger or a flight risk and with the regulation placing the burden on the alien to prove his nonrisk. However, the discrepancy is resolved in the case of aliens such as Rodriguez who fall under the first prong of the statute-aliens who are inadmissible under 8 U.S.C. § 1182 or removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4).

Rodriguez also raises a constitutional claim, asserting that his detention violates his due process rights.[5] The essence of the complaint is that he is being detained unlawfully in violation of his constitutional rights to substantive due process and against cruel and unusual punishments. The Court has some very serious concerns about Rodriguez's detention and the detention of similarly situated aliens who are waiting to be removed [6], but because Rodriguez has not exhausted his administrative remedies, his constitutional claim before this Court is premature.

The petition is dismissed, for petitioner's failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

**5.** Though this section of his petition is entitled "Cruel and Unusual Punishment of Stateless Person," the nature of the claim is more akin to a due process violation claim.

**6.** As of September, 1998, there were approximately 2,800 such aliens. Mike Clary and Patrick J. McDonnell, *Sentenced to a Life in Limbo*, L.A. Times, Sept. 9, 1998, at A1. They are held in detention because the I.N.S. is unable to deport them to their countries of origin-such as Cuba-for various reasons, yet they have no hope of being released in the U.S.

The particularly troublesome aspect of [this sort of detention] is its duration to date and its potential, if not certainty, for indefinite duration in the future. Detention is intend-ed for the sole purpose of effecting deportation, and once it becomes evident that deportation is not realizable in the future, the continued detention of the alien loses its raison d'etre. If there is nowhere to send the alien, then indefinite detention is no longer a temporary measure in the process of deportation; it is permanent confinement. "Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus justifiable only as a temporary measure."

*Zadvydas v. Caplinger*, 986 F.Supp. 1011, 1026 (E.D.La.1997) (quoting *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir.1981)).